TROUP *against* SHERWOOD & WOOD.

Where after publication passed, a party files *articles*, and gives notice of the examination of witnesses to impeach the credit of former witnesses; the adverse party may examine witnesses to support the credit of his witnesses who have already deposed; and is entitled to a rule to produce witnesses, and pass publication, as in other cases.

A copy of articles filed, with notice of the examination to discredit witnesses, must be served on the adverse party, within 14 days after obtaining a copy of the depositions.

And *copies* of the *interrogatories* to be administered to the witnesses, must be furnished to the adverse party, *six* days, at least, before the day assigned for their examination.

*It seems*, that articles to impeach the credit of witnesses after publication passed, may be filed after the cause has been set down for hearing.

The rule of evidence as to impeaching the credit of witnesses who have been examined, should be the same in equity as at law: The inquiry ought to be general, as to the *general character* of the witness for *veracity*.

But, *it seems*, that on a *special* application of the court, the inquiry may be allowed to go beyond the general credit, as to particular facts affecting his character, provided those facts are not material to the matter in issue between the parties.

*November 9th.*    *VAN VECHTEN*, for the defendants, moved to pass publication (of depositions taken to impeach the credit of the plaintiff's witnesses) in this cause, *instanter*. He read the affidavit of *S.* one of the defendants, and who is solicitor for the other, stating, that on the 4th of *August* last, he first ascertained that publication had passed in this cause; and he made application to the court on the 17th of *August*, for leave to examine other witnesses, which was

denied. That on the 17th of *October* last, he renewed the application, on affidavits more precise as to facts and dates, but it was again refused. That about the *first of October* last, he obtained copies of the depositions of the plaintiff's witnesses, and having ascertained facts which induced him to believe that the testimony was untrue in several important particulars, he prepared articles to impeach the testimony, and interrogatories to several witnesses to be examined, for that purpose; and gave notice of their examination, before the examiner, at *Utica*, on the 30th of *October* last. That he, this day, proposed to the plaintiffs to consent to have publication pass as to those depositions, so that the defendant might be ready for hearing at the next court; but the plaintiff's solicitor refused his consent, and the cause is noticed for hearing on *Wednesday* next.

*Van · Buren*, (Attorney General,) and *Henry*, contra. They read affidavits, stating, that three witnesses were examined on the part of the plaintiff, in *July*, 1817, and the rule for publication passed in *December* last. That on the 19th of *October* last, the cause was set down for a hearing on the 11th of *November* instant, and notice thereof, served on *S.*, one of the defendants, on the 24th of *October*. That on the 26th of *October*, the plaintiff's solicitor received notice that articles had that day been filed, impeaching the plaintiff's witnesses, with a copy of the interrogatories, and notice of the examination of certain persons in *Utica*, on the 30th of *October*. The *notice* mentioned, that the defendants intended to examine five witnesses, who were named, to the *credit* of the three witnesses already examined in the cause. There were *six* interrogatories, some of which inquired as to all the facts and merits of the cause; and the *articles* filed to discredit the testimony of the plaintiff's witnesses, not only stated that the witnesses were of bad character, &c., but stated

1818.

TROUP
v.
SHERWOOD.

**1818.**

TROUP
v.
SHERWOOD.

the particular facts in their depositions which were alleged to be untrue.

The counsel for the plaintiff insisted, that the motion ought not to be granted, 1. Because the notice and copy of the *articles* were not served within 14 days, according to the 27th rule of the court:

2. Because the interrogatories were not served *six* days before the examination, according to the 28th rule of the court:

3. Because the articles were drawn and served after the cause was set down for a hearing, and notice thereof served:

4. Because the interrogatories were not confined to the *character* of the witnesses intended to be impeached, but included various material facts in issue between the parties:

5. Because a motion to pass publication on these articles without a previous rule to produce witnesses, would deprive the plaintiff of an opportunity to rebut the testimony of the defendant's witnesses, &c.

THE CHANCELLOR. The motion on the part of the defendants, is for a rule to pass publication, *instanter*. The publication here alluded to, does not relate to the testimony taken in chief; for as to that testimony, publication has passed long ago. It relates to the testimony which is presumed to have been taken within a few days past, before the examiner at *Utica*, in order to impeach the credit of one or more of the plaintiff's witnesses.

There are several objections to this motion:

1. If we were to assume, in favour of the defendants, that the testimony has neen regularly and duly t: ken, the plaintiff is entiled to a rule to produce witnesses, and to pass publication, in this case as in all others. He is at liberty to examine, on his part, to support the credit of his witnesses, and depositions taken upon such an occa-

sion, must be published, as in other cases. The rule is so laid down in the books of practice. (*Gilbert's F. Romanum*, 148. 1 *Harrison's Ch. Prac.* 511.) The plaintiff is, then, entitled to his successive rules, to produce witnesses, and pass publication, of three weeks each, according to the settled practice of the court. But,

2. The examination, of which publication is now sought, was irregular; for a copy of the articles filed to discredit the witnesses, together with notice of the examination, ought to have been served on the adverse party within fourteen days after obtaining a copy of the depositions. Rule 27.) The defendant who acts for himself, and as solicitor for his co-defendant, admits, that he obtained a copy of the depositions about the 1st of *October*, and it was not until after the 26th of *October* that the articles were filed and the notice given. There has been no application to the court to enlarge the time in this case, nor does any sufficient reason appear why the rule was not complied with. The consequence is, according to the language of the rule, that "the cause is not to be delayed on account of such examination;" and it must be delayed, if we support the examination; for the plaintiff, in that case, will be entitled to his rule to produce witnesses. If the examination be supported at all, it must be upon the admission of all the rights of the opposite party.

3. Another objection to the regularity of this examination is, that the interrogatories were not furnished six days before the day assigned for the examination, which was requisite by another settled rule of the court. (Rule 68.)

Either of these grounds are fatal to the motion.

It was urged, also, that such a charge could not be made after the cause was set down for hearing. I find, in *Russel* v. *Atkinson*, (*Dickens*, 532.) that the application was held regular, after the cause had been set

down, and, therefore, I do not place myself, at present, upon that point.

But the interrogatories, and the articles impeaching the witnesses, have been produced and commented upon ; and I think the occasion requires, that I should take some notice of the extent to which this inquiry is attempted to be carried. It is plain to perceive, that the interrogatories do go into the merits of the issue, under pretence of examining as to credit only. This cannot be permitted ; for it would be indirectly breaking down those ancient and salutary rules, which require the examination on the merits to be closed as soon as publication has passed.

It may be somewhat difficult to reconcile all the cases, and to define the precise limits within which these special examinations are to be confined. I have endeavoured to discover the principle on which they ought to rest.

In *Gill* v. *Watson*, (3 *Atk.* 521.) Lord *Hardwicke* said, that at law you could only examine to the general credit, but that in equity the witness must be able to answer any particular charge, because, by the mode of the examination, he has time for recollection. The reason assigned is not sufficient for the distinction; and the reporter, Mr. *Atkyns*, adds, by way of *quære*, whether there be any such distinction. He says, that Mr. *Cappen*, an eminent and experienced practitioner, told him, that examinations to the credit were general here as well as at law, and so was the form of the interrogatories.

The doubt, in this case, is perfectly warranted by the authority of Baron *Gilbert*, (*Forum Romanum*, 147, 8.) who says, that the rule of evidence is the same here in equity, as it is at law, and that the inquiry only relates to those crimes, or that general bad character, which would disqualify or discredit the witness at law.

In *Purcell* v. *M'Namara*, (8 *Vesey*, 324.) the point was, however considered as unsettled, even after the accession

*1818.*

*Troup*
*v.*
*Sherwood.*

of *Lord Eldon ;* and it underwent much discussion in that

case.

The motion there was for leave to exhibit articles as to the credit of a witness, interrogating him as to particular facts, whether he had not been a woollen draper, and insolvent, &c.

The counsel against the motion contended, that the only point to which they could examine, was the general one, whether the witness had credit to be believed on his oath, and that there was no instance of liberty given to contradict any fact sworn to in the depositions published.

But the counsel on the other side mentioned instances of such examinations, going into particulars; and the nature of those particulars, is worthy of notice. In one case, the witness had deposed in chief, that she had lived with the defendant in the particular capacity of a milk maid; and the charge against her credit was, that she did not live with him in that, or any other, capacity. In another case, the witness had stated, that she was a widow, and the charge was, that she was a wife to the defendant. It will readily be perceived, that those were cases of a particular solitary fact, although *dehors* the matter in controversy, and that they had not the remotest connection with each other. The fact stood distinctly by itself, and no art or stratagem could conduct the inquiry to the forbidden ground of the matter in issue. Lord *Eldon* observed, that if you were to examine as to what was material in the cause, under colour of examining to the credit, the allegation in favour of such examinations would be made in every case, and would be endless. He, accordingly, concluded, that the party was at liberty to examine by general interrogatories to credit, and as to such particular facts only as were not material to what was in issue in the cause.

We are to bear in mind, that the case in which this decision was made, was only as to the inquiry, whether the

1818.

Troup
v.
Sherwood.

witness had been a woollen draper, and whether he had been insolvent.

The rule in this case was implicitly followed in *Wood* v. *Hammerton*; (9 *Vesey*, 145.) and in *Carlos* v. *Brook*, (10 *Vesey*, 49.) Lord *Eldon* explained more at large the principles of his former decision. He said, that the examination, as to credit, was to be confined to general credit, by producing witnesses to swear that the person is not to be believed upon his oath; and that if you find him swearing to a matter not in issue, there was no danger in permitting the opposite side to state that such fact was false. He said, that, in *Purcell* v. *M'Namara*, it was agreed to be competent to examine any witness to the point, whether he would believe that man upon his oath; and in that case the witness went into the history of his own life, and of his solvency, though there was no matter in issue as to his insolvency, or whether he had compounded with his creditors. It was, accordingly, allowed to the other party, by way of affecting his credit, to show, that what he had related of himself, and which had no concern with the cause, was false.

The point again came up before Lord *Eldon*, in *White* v. *Fussell*. (1 *Ves. & Bea.* 151.) The defendant had obtained an order for a commission to examine witnesses to the credit of a witness, and as to such particular facts as were not material to what was in issue. (Vide the order in this case in 2 *Ves. & Bea.* 267. note.)

The Lord Chancellor observed, that applications of that kind were always regarded with great jealousy; that the court requires that the examination should be only to the credit of the witness, and to facts affecting credit and character only, and those not material to the matter in issue.

This case contains an important observation, in that part of the opinion which limits the particular facts to such as affect *the credit and character only*, and under this limita-

tion, and after confining the inquiry, as all the cases seem to do, to some special, prominent facts, *totally detached from the cause,* I do not know that the rule is very liable to abuse. In every possible allowance of it, I apprehend we ought to watch the application with a narrow scrutiny. I should, however, if the point was *res integra,* prefer the simplicity and safety of the old rule of practice, recommended by the counsel in *Atkyns,* and explicitly laid down by Lord Ch. Baron *Gilbert,* and confine the inquiry, as at law, to the general character of the witness, as a man of veracity. The Vice-Chancellor, in *Watmore* v. *Dickenson,* (2 *Ves. & Bea.* 267.) said, that the only proper question, was, whether the witness was worthy of belief on oath.

If, however, we take Lord *Eldon's* rule, limited and regulated as it has been by the process of his slow and cautious, but generally unerring judgment, and apply it to the present case, we cannot hesitate, for a moment, in condemning the interrogatories before us, as palpable violations of the rule. They go at once to the very ground of controversy, and touch the merits of the case. If the examinations were before me, they would be immediately suppressed.

But while the motion must be denied, as well on the merits, as on the point of regularity, it becomes a question, whether I ought not to permit an inquiry as to the general credit of the witnesses. The suitable restrictions upon these collateral examinations, has never before, within my knowledge, been discussed in this court. They have been unsettled, until a very recent date, in *England,* and, perhaps, it may be deemed reasonable, under these circumstances, to allow the defendants an opportunity to question the credit of the witnesses. It is, however, rather a matter *ex gratia,* than founded on any right on the part of the defendants to ask it. Whilst I lay down rules for the future government of the court, I am very anxious

that these expositions of the law should not operate as a surprise upon the party in the given case.

I shall, therefore, allow the defendants to file articles of impeachment *de novo*, confined to the question of general credit, on condition that they be filed by the opening of the court to-morrow, and that the plaintiff's costs of setting down this case for a hearing at this term, be paid at the same time. It is most reasonable that the defendants should pay these costs, for the irregular examination in question was conducted contrary to the printed rules of this court, which they must have had before them. If an inquiry is to be had, it ought to be confined to the general character of the witnesses for veracity, for the affidavit of the defendant states no particular, special, detached facts, proper for a more particular examination. When the inquiry is to go beyond the general character, it cannot be *of course* under the general rule; but there ought to be a special application to the court, so that it may be previously seen whether there be any fit ground for such an examination. And, I understand, by the case of *Mill* v. *Mill*, (12 *Vesey*, 406.) that the *English* rule is, that no examination in chief, as to the *credit* of witnesses, can be had without a special order, upon application, and notice to the party. It would otherwise be deemed an impertinent inquiry. I am not informed what has been the practice of this court on that point.

Rule accordingly.