## Case No. 17,953.

### WOOD v. MANN et al.

[2 Sumn. 316.][1]

Circuit Court, D. Massachusetts. May Term, 1836.

EQUITY PROCEDURE — PUBLICATION OF TESTIMONY —EXAMINATION OF NEW WITNESSES—NEWLY-DISCOVERED EVIDENCE.

1. The general rule of equity proceedings is, that after publication of the testimony, no new witnesses can be examined, and no new evidence can be taken, unless where the judge himself, upon or after the hearing, entertains a doubt, or when some additional fact, or inquiry is indispensable to enable him to make a satisfactory decree.

[Cited in Eillert v. Craps, 44 Fed. 793.]

2. A witness may be examined to the mere credit of the other witnesses, whose depositions have been already taken and published in the cause, but he will not be allowed to be examined, to prove or disprove any fact, material to the merits of the case.

[Cited in Teese v. Huntingdon, 23 How. (64 U. S.) 12.]

3. The time for publication will be enlarged, or more properly, the time for taking the testimony will be enlarged, after publication has passed, though not in fact made, according to the rules of the court, provided some good cause therefor is shown upon affidavit, as surprise, accident, or other circumstances, which repels any imputation of laches. The affidavit is indispensable, except in a case of fraud, practised by the other party.

4. Exhibits in the cause may be proved after publication, and even vivâ voce at the hearing, when there has been an omission of the proof in due season, and they are applicable to the merits.

5. Fresh interrogatories and a re-examination have been permitted after publication, where depositions have been suppressed from the interrogatories being leading, or for irregularity, or where it has been discovered, that a proper release has not been given, to make a witness competent.

6. Semble, that new testimony may be taken after publication to facts and conversations occur-

---

3 Beames, Orders Ch. pp. 165, 166; Id. p. 167, and note 6. See Mitf. Eq. Pl. p. 318.

1 Reported by Charles Sumner, Esq.]

ring after the original cause is at issue, and publication has passed.

[Cited in Gass v. Stinson, Case No. 5,261; Jenkins v. Eldredge, Id. 7,267.]

7. The court may, in the exercise of a sound discretion, allow the introduction of newly discovered evidence of witnesses to facts in issue in the cause, after publication and knowledge of the former testimony, and even after the hearing. But it will not exercise this discretion to let in merely cumulative testimony.

[Cited in Ocean Ins. Co. v. Fields, Case No. 10,-406; Jenkins v. Eldredge, Id. 7,267.]

8. The same rule holds in cases of bills of review, and supplementary bills in the nature of bills of review.

[Cited in Irwin v. Meyrose, 7 Fed. 536.]

9. Semble, that the rule ought to be confined to cases of the discovery of new evidence of a documentary nature, and the testimony of witnesses, necessary to substantiate this.

Bill in equity [by Josiah Wood, Jr., against Samuel H. Mann and others] to set aside a certain conveyance made by the complainant to one John R. Adams (a defendant,) asserted to have been procured by fraud and imposition, upon the plaintiff. The case has already been twice before the court, on interlocutory motions [Cases Nos. 17,951 and 17,952], and was set down for a hearing, at the next September adjournment of the court. A petition was now filed on behalf of the plaintiff, to take the testimony of a witness, to be used in the cause, at the hearing, upon the ground, that it was material testimony, going to the merits of the case, as put in issue, and which has been very recently (within a few weeks) discovered by the plaintiff. The petition was supported by the affidavit of the plaintiff, as to the recency of the discovery of the evidence, any by an ex parte deposition, given by the witness himself of the facts, which he can establish, consisting of confessions made by the defendant, Mann, to the witness about five years ago, and before the institution of the present suit. Publication of the evidence in the cause passed nearly a year ago; the parties have long been in full possession of it; and indeed, for their convenience it was printed, and open to the freest inspection. The question was on the admissibility of this evidence, at this stage of the cause.

B. Rand, for plaintiff.
F. Dexter, for defendants.

STORY, Circuit Justice. Of the materiality of the testimony now proposed to be taken, no doubt can be entertained. It goes to establish many of the leading points of fact in controversy between the parties; and if not vital in the cause, it is on all sides admitted to have a most stringent force and pressure. It is under circumstances, so rare and so novel, that this court is called upon to decide one of the most important and delicate questions of practice; than which, indeed, few, if any, can be presented, better

deserving of deliberate consideration, and striking deeper into the foundations of equity jurisprudence. It is upon this account, that I have taken time to examine the whole subject, with all the aids, which could be derived from the labors of counsel and my own auxiliary researches; feeling, as I do, an anxious desire to perform on the present occasion, exactly what upon the most careful survey of principles and authorities, it is my duty judicially to perform. The general rule in equity proceedings is, that, after publication of the testimony, no new witnesses can be examined, and no new evidence can be taken. This rule is at least as old as the time of Lord Bacon, among whose Ordinances in Chancery, we find the following: "No witnesses shall be examined after publication, except by consent, or by special order ad informandum conscientiam judicis; and then to be brought close sealed up to the court to peruse or publish, as the court shall think good." The true exposition of the latter qualification of this rule would seem to be, that the new evidence to inform the conscience of the judge, should not be taken, but upon or after the hearing, when the judge himself entertains a doubt, or when some additional fact or inquiry is indispensable to enable him to make a satisfactory decree. So was the doctrine held in Newland v. Horseman, 2 Ch. Cas. 74; and it is strongly fortified by what fell from Lord Manners in Savage v. Carroll, 2 Ball & B. 444, and by the master of the rolls in Parken v. Whitby, 1 Turn. & R. 366. Except for such purposes and under some special order of the court itself at or after the hearing, no such testimony, taken after publication, is now deemed admissible, at least unless under extraordinary circumstances, under the rules. The practice of taking such testimony before the hearing, and keeping it sealed up to be used by the court at the hearing, if it should be deemed meet, is said by the text-writers to have fallen into disuse, and not to have been in practice for more than a century.[2] There is an old case reported in Cary, 83, which shows what the old practice was; and I quote it in the very words of the report. "Upon affidavit made by the plaintiff, that since publication granted he had divers witnesses (setting down their names) come to his knowledge; therefore ordered he may examine them before the examiner, ad informandum conscientiam judicis." No other circumstances are stated; and therefore it is impossible to know, what the facts were, or whether the other testimony taken had been actually seen by the plaintiff.

The general rule is founded in the obvious public policy of suppressing perjury, and

[2] Hind, Prac. 316; Beames, Orders Ch. 33, notes 117, 118; Dalby v. Mace, Toth. 192; Cary. 83; Wyatt. Prac. Reg. 354, 355; Willan v. Willan, 19 Ves. 592.

the fabrication of evidence, to meet the exigencies of the cause after the full bearing and weight of the testimony are understood by all the parties. If, under such circumstances, the parties were permitted to supply the actual deficiencies of the evidence from time to time, as they should be found out, there would be strong temptations to corrupt, and insidious practices to obtain new evidence; and there would be a premium held out for delays and omissions of diligence in taking the evidence, until the whole strength of the adversary's cause was disclosed. Courts of equity, from considerations of this sort, have always been disposed to uphold the rule with a firm and rigid exactness. Lord Eldon, in Whitelocke v. Baker, 13 Ves. 511, said: "This court will not enlarge publication, without a very special case made. The party's want of knowledge of the rules of proceeding, and want of attention in his solicitor, are not sufficient. The rules of justice are founded in great general principles, not to be broken down by such circumstances." Lord Macclesfield, in Cann v. Cann, 1 P. Wms. 727, laid down the doctrine in more emphatic terms. "The precedent methods (said he) of this court were, that, after publication is passed, and the purport of the examinations known to the parties, neither side is allowed, though they come recent, to enter into part examination of the matters in question, since otherwise there would be no end of things, and such a proceeding would tend to perjury, as well as vexation."

Exceptions, however, have been admitted to the general rule; and to these our attention will now be directed, in order to ascertain, how far they are applicable to the circumstances of the case before the court. The exceptions will be found for the most part to turn upon grounds entirely consistent with the policy of the general rule, and in no manner trenching upon its justice or inconvenience. At the same time, they exhibit in a marked manner the reluctance of the court to break in upon the general uniformity of the practice, except under very special circumstances.

It will not be necessary to go over the authorities at large; for they do not present any general diversity of judgment, requiring comment or criticism. They rather arrange themselves into classes, in each of which every successive judge has shown a solicitude to keep within the limits prescribed by his predecessors.

The first class of exceptions is, that of the examination of witnesses to the mere credit of the other witnesses, whose depositions have been already taken in the cause. This is the ordinary practice, and is done upon articles or objections filed. Beames, Orders Ch. p. 32, § 72; Id. p. 187, § 80. But, then, in these cases, the general interrogatory only, whether he (the proposed witness,) would believe the other on his oath, (which is the usual form of putting the interrogatory in England, and differs widely from that, in which it is usually put in America; see 1 Starkie, Ev., 2d Ed. London, 1833, 182; Watmore v. Dickinson, 2 Ves. & B. 267, 268; Carlos v. Brook, 10 Ves. 50), is that, upon which the new examination is allowed, unless under very special circumstances. And there is this close limitation upon such special circumstances, that the interrogatory shall not be to any facts put in issue in the suit; but only to such facts, as merely touch the credit of the witness. This doctrine was expounded very fully, by Lord Eldon in Purcell v. M'Namara, 8 Ves. 324, 326; Wood v. Hammerton, 9 Ves. 145; Carlos v. Brook, 10 Ves. 50; White v. Fussell, 1 Ves. & B. 153; and it was recognized and acted upon by Mr. Chancellor Kent in Troup v. Sherwood, 3 Johns. Ch. 558, where he critically examined the leading authorities. But, what is most important in its bearing on the present case, is the absolute refusal of the court in these cases, to allow the witness to be contradicted as to any fact, which he had sworn, touching the merits of the matters in issue between the parties. "If," said Lord Eldon, in Purcell v. M'Namara, "for instance, the fact is material to the merits of the case, and the witness has sworn to it, there is great danger of bringing other witnesses, under color of discrediting that witness, to prove or disprove such fact." See Gilb. Forum Rom. 147; Smith v. Turner, 3 P. Wms. 413.

Another class of exceptions is, where the application is made to enlarge the time for publication, or more frequently to enlarge the time for taking the testimony after publication has been, in form, though not in fact, made, according to the rules of the court. To such applications, whenever they will cause any delay in the cause, the court does not listen without some good cause shown upon affidavit; such as surprise, accident, or other circumstances, which repel any imputation of laches. See Gilb. Forum Rom. 124; 1 Harris, Ch. Prac. (by Newland) c. 43, pp. 285, 287. See, also, Watmore v. Dickinson, 2 Ves. & B. 267, 268; Cutler v. Cremer, 6 Madd. 254. And in all cases of this sort before the application is allowed, the party and his clerk in court, and solicitor, are required to make oath, "that they have neither seen, heard, read, nor been informed of any of the contents of the depositions taken in that cause; nor will they see, hear, read or be informed of the same till publication is duly passed in the cause." Gilb. Forum Rom. 146. See, also, Anon., 1 Vern. 253; Hind, Prac. 384, 385. And this affidavit is so important, that the court will never dispense with it, except in a case of fraud practised by the other party, to evade the rule; as was the case in a memorable instance in Lord Somers's time, stated by Chief Baron Gilbert (Gilb. Forum Rom. 146). Lord Eldon, in commenting on the affidavit,

and the strictness of the rule requiring it, said: "That it is founded upon this, that no more dangerous mode of proceeding can take place than permitting parties to make out evidence by piecemeal, and to make up the deficiency of original depositions by other evidence." Whitelocke v. Baker, 13 Ves. 512. In the same case, where a motion was made, the effect of which was to introduce new evidence to be taken after the cause had been set down for a hearing, he added: "The next ground for this motion is the materiality of the farther evidence, which it is supposed can be given. If that could be represented as most highly material, I dare not trust myself with laying down a precedent, that would authorize attempts to bring forward an application in every case, where even after a cause had been set down the party might see, that it would not be convenient to hear the cause upon the evidence, on which he originally intended to put it. The danger from that would be enormous." Whitelocke v. Baker, 13 Ves. 512. The only material abatement from the force of this language, as applied to the present case, is, that it was spoken in a case not of newly discovered evidence, but of known evidence alleged to have been improperly and irregularly taken. Mr. Chancellor Kent, in Hamersly v. Lambert, 2 Johns. Ch. 432, reviewed the authorities, and sustained the doctrine, as above stated, with all the weight of his own great opinion.

Another class of exceptions is the proof of exhibits in the cause, after publication, and even viva voce at the hearing, where there has been an omission of the proof in due season, and they are applicable to the merits. Gilbert, in his Forum Romanum (p. 183), takes notice of this practice, and says: "Upon this rehearing any exhibit may be proved viva voce, as upon the original hearing. But no proof can be offered of any new matter, without special leave of the court, which is seldom granted." The like doctrine is fully supported in many cases. See Wright v. Pilling, Finch, Prec. 496; Dashwood v. Lord Bulkeley, 10 Ves. 238; Buckmaster v. Harrop, 13 Ves. 458; White v. Fussell, 1 Ves. & B. 153; Higgins v. Mills, 5 Russ. 287; Wyld v. Ward, 2 Younge & J. 384; Williams v. Goodchild, 2 Russ. 91; Dale v. Roosevelt, 6 Johns. Ch. 256.

Another class of exceptions is, where depositions have been suppressed, from the interrogatories being leading, or for irregularity, or where it has been discovered, that a proper release has not been given to make a witness competent; in every such case, from the obvious necessity, and in furtherance of justice, fresh interrogatories, and a re-examination have been permitted. Lord Arundell v. Pitt, Amb. 585; Perry v. Silvester, Jac. 83; Curre v. Bowyer, 3 Swanst. 357; Sandford v. Paul, 3 Brown, Ch. 370; s. c. 1 Ves. Jr. 398, 2 Dickens, 750; Spence v. Allen, Finch, Prec. 493; Shaw v. Lindsey, 15 Ves. 380; Cox v. Allingham, Jac. 337, 341, 343; Callow v. Mince, 2 Vern. 472. In the case of Sandford v. Paul, 2 Dickens, 750, 3 Brown, Ch. 370, and 1 Ves. Jr. 398, it appears from Mr. Dickens' Reports, that the subject was a good deal examined, and many authorities are cited by the reporter to show, that the strictness of the rule had been relaxed in special cases of this nature.

All these classes of exceptions stand upon peculiar grounds, and steer wide from any of the just objections, which have been urged against the introduction of new evidence, after the pressure of the evidence, as taken, is fully known to both parties. The qualifications and limitations accompanying these exceptions demonstrate, in the most full and satisfactory manner, that the design of upholding the policy of the general rule constitutes the main ingredient in the view of the court in acceding to, or refusing every application. If the existence of the evidence is fully known at the time of the taking of the depositions, and if it is not purely the case of written evidence, it will be difficult to find any uniform relaxation of the general rule, that after publication passed, and the depositions have been seen, no new evidence shall be admitted.

The question, then, is reduced to this, whether new evidence by witnesses, which has been discovered since publication has passed, and the contents of the depositions been made known, can, consistently with the general objects and purposes of the rule, be allowed? Now, this is partly a matter of authority, and partly of principle. And I fully agree, that, if upon a rehearing, or upon a bill of review, or upon a bill in the nature of a bill of review, the evidence of new witnesses ought to be let in, then it ought now to be allowed, to avoid circuity of remedy and increased expenses in litigation. If, on the other hand, it would not, under such circumstances, be allowed; and if, in analogous cases, it has been rejected; and if no direct authority can be shown in favor of the motion; then, since it must be a case of not infrequent occurrence in practice, each of these considerations will furnish strong objections against the motion.

I have said, that if upon a rehearing, or a bill of review, the plaintiff would be entitled to the benefit of this testimony, he ought now to be entitled to it; and, as it is applicable to points already in issue, there is no need of a supplementary bill. In this view of the subject I feel myself strongly fortified by the language of Lord Eldon in Milner v. Lord Harewood, 17 Ves. 148. "There is" (said he) "no recollection of a supplemental bill of this kind; and if a new practice is to be settled, the strong inclination of my opinion is, that when the particular case arises, where either conversation or admission of the defendant becomes material after answer or replication; or, as in this instance, after examination of witnesses in the original cause; or if a new

fact happens after publication, which it is material to have before the court in evidence, when the original cause is heard, it is much better, if the examination of witnesses, if required, should be obtained upon a special application for the opportunity of examining, and that the depositions may be read at the hearing; or if discovery is required, that the party should file a bill for that purpose merely; and if relief is required, that the answer comprehending the discovery, should ·be read at the hearing of the original cause." This language would certainly seem to show, that there were cases, in which new testimony might be taken after publication, at least as to facts and conversations occurring after the original cause is at issue, and publication passed. Here, however, the application is to admit newly discovered evidence of confessions before the bill was filed. In Willan v. Willan, 19 Ves. 591, Coop. Eq. 291, the same great judge said: "It is perfectly established, that after .publication, previous to a decree, and the depositions have been seen, you cannot examine witnesses farther without leave of the court, which is not obtained without great difficulty; and the examination is generally confined to some particular facts. At the hearing of the cause, the court sees all the evidence; and if, instead of deciding upon inference, it directs inquiries, the decree directing these inquiries is, in truth, the leave of the court given for farther examination of witnesses upon the very point." It is difficult to ascertain the precise limitations, which ought to be applied to language so general; and whether the learned judge meant merely to advance the suggestion, that the· court might, to satisfy its own conscience, direct new evidence to be taken at or ·after the hearing; or whether he meant to state, generally, that new testimony might be taken, upon a case made to the court, at any time after publication, and before the hearing. Unfortunately, the case did not call for a more explicit declaration of opinion. But my impression is, that the former was all, that was intended by the language.

In Smith v. Turner, 3 P. Wms. 413, the cause was heard, and there appearing to the court some reason to suspect, that the defendant had a deed in his custody, it was ordered, that he should be examined on interrogatories touching the deed.  Upon the examination, he denied his having the deed, and all the circumstances relating thereto. The master certified, notwithstanding, that he thought it reasonable, that the plaintiff, who prayed a commission to examine witnesses to falsify the defendant's examination, should have one. But the court refused it, saying: "At this rate three or four causes might spring out of one; and though there could be no mischief in examining the party himself; yet the examining witnesses, after publication passed, especially where it may relate to the matter in issue. is against the rule of the court, and may be greatly inconvenient, and make causes endless." This case certainly affords a strong illustration of the real purport of the general rule; and would make one hesitate in supposing, that Lord Eldon meant, in the cases above stated, to maintain a broader doctrine.

In Ward v. Eyles, Mos. 377, the court would not allow a party in a cross bill to examine witnesses after publication passed, and the depositions seen, to the matters in issue in the original cause. On that occasion, the lord chancellor said: "There is no rule in this court more sacred, than, that witnesses shall not be examined in another cause, to matters in issue in a former." Yet, certainly, in a cross bill, the party would be entitled to more favor, than upon a mere application in the original cause.

In Mayor of London v. Dorset, 1 Ch. Cas. 228, where a trial of an issue was directed at law, an application was made for a commission to examine a witness eighty years old, who was not discovered until that time, and was unable to travel. If she was able to travel, she would be examinable at the trial. though publication had passed. The court granted the commisson, apparently, as it should seem, upon the ground, that otherwise the testimony would be lost; and yet the witness might, if living, be examinable at the trial at law.

In Bank v. Farques, Amb. 145, 1 Dickens, 167, where a hearing was adjourned over, and it was moved for liberty to examine a witness, to prove the handwriting of a witness to a deed, material in the cause, the motion was granted by Lord Hardwicke. So, in Abrams v. Winshup, 1 Russ. 526, where the evidence proved the execution of the will; but the witnesses had not been examined as to the sanity of the testator; the cause was adjourned at the hearing, and liberty given to exhibit an interrogatory to prove ·his sanity. In each of these cases, the object was special, to establish the verity of a necessary document in the cause.

In Blake v. Foster, 2 Ball & B. 457, an application was made upon the hearing for liberty to adduce newly discovered evidence partly oral, and partly documentary. It was rejected, not upon any ground of the nature of the evidence; but because it was not in reality newly discovered. The case, therefore, decides nothing to our present purpose.

In Clarke v. Jennings, 1 Anstr. 173, 174, a motion was made after publication for leave to exhibit interrogatories. to authenticate an old paper writing material in the cause, and for a commission to prove the same. · The motion was opposed as being too late, and that exhibits only can be proved after· publication. The court of exchequer thought, that though not an exhibit. it was in the nature of one, and granted the rule, so as that it did not delay the hearing of the cause. It is proper to remark, that the application was confined to a mere written document.

In Williamson ·v. Hutton, 9 Price. 194, after a tithe cause had been set down for a rehear-

ing, a motion was made on behalf of the plaintiff for the examination of one or more witnesses, to prove certain accounts or rentals, and a terrier or memorandum, made by a former vicar, and to read the depositions at the rehearing, upon the ground of their having been discovered since the original hearing, and were before unknown to the plaintiff. The court granted the motion; and it was added: "If these papers had been found at the hearing, we should have ordered the cause to stand over, for the purpose of giving the plaintiff an opportunity of exhibiting an interrogatory." This too was the case of a written document.

In Cox v. Allingham, Jac. 337, permission was given at the hearing to exhibit an interrogatory as to the loss of a deed, omitted by mistake to be proved in the proper manner. Sir Thomas Plumer, in delivering his opinion on this occasion, stated his strong impression of the dangers, that would arise, if in every instance a party, whose case broke down at the hearing, were at liberty to go into farther evidence. At the same time he admitted, that it was too late to argue, that there could be no case of exception to the general rule, after it had been departed from in some instances, and by great authorities. He also took notice of the circumstance, that the evidence proposed to be given related only to the proof of a document.

In Ord v. Noel, 6 Madd. 127, an application was made to file a supplemental bill, in the nature of a bill of review, on account of the discovery of some deeds and facts, connected therewith, since the decree. The vice chancellor refused the petition; and the only remarks, material to our present purpose, which he made on that occasion, are;—that if the plaintiff had applied, after he had discovered the contents of these deeds, and before the cause was finally heard, to have the benefit of this discovery at the hearing, the court would have found the means to render him that justice; and, that the new matter for a bill of the nature proposed must be such as, if unanswered, would clearly entitle the plaintiff to a decree, or would raise a case of so much nicety and difficulty, as to be a fit subject of judgment in a cause. Brigham v. Dawson, Jac. 243, was a similar application, and shared a similar fate.

Coley v. Coley, 2 Younge & J. 44, was an application after publication passed, and the cause set down for a hearing, for liberty to examine two further witnesses, one only having been examined. to prove the execution of a will in the pleadings mentioned. The court granted it, saying, that if upon the hearing of the cause, the plaintiff had been unable to prove the execution of the will, the case would have been allowed to stand over, for the purpose of supplying that proof, upon payment of the costs of the day.

Then came Wyld v. Ward, 2 Younge & J. 381, where upon a rehearing, a motion was made to exhibit an interrogatory to prove certain facts, upon the ground, that they were newly discovered since the original hearing. Upon this occasion, there was an elaborate argument by counsel. But the court granted the motion, saying, that it had a discretion to grant or refuse it, according to the circumstances of the particular case.

In Williams v. Goodchild, 2 Russ. 91, an application was made, upon an appeal from a decree of the vice chancellor to the lord chancellor, for permission to use on the hearing of the appeal, some old documents and bailiff's accounts, which had been discovered since the original hearing. On that occasion Lord Eldon said: "I cannot lay it down, that new evidence can in no case be received; nor will I decide, that it is not to be introduced in this case, if the evidence, here tendered, shall be shown to be in its nature admissible, and a proper ground for its introduction shall be laid." The question was afterwards adjusted by an arrangement between the parties.

These are all the English authorities, bearing directly on the point now before the court, which the researches of counsel, as well as my own, have brought to my notice. What is very remarkable is, that not one of them presents the case of an application to introduce newly discovered oral evidence; or newly discovered witnesses; but they all relate to written documentary evidence. The courts, upon deciding upon these applications, however, made no allusion to any distinction, or practice excluding oral evidence; and the generality of the language sometimes used might incline one to believe, that the evidence of new witnesses might, under some circumstances, be within the contemplation of the court. Finding no direct English authority, either way, upon the point of the exclusion of oral evidence, unconnected with new written evidence, I have sought for information in cases of an analogous nature, such as bills of review, and supplementary bills, in the nature of bills of review; for (I repeat it), if in such cases, the evidence would be admissible, it ought now to be admitted. Unfortunately, there are not many cases of this sort to be found, and those, which do exist, do not afford any very satisfactory lights to settle the question now before the court. Indeed, bills of review are of very rare occurrence. Lord Chancellor Lyndhurst in Partridge v. Usborne, 5 Russ. 249, 250, observed, that for the period of a century past very few instances had occurred of bills of review having been allowed to be filed. In that very case, he allowed matters, dependent upon oral as well as written evidence, which had been discovered since the decree, to be brought forward by a supplemental bill, in the nature of a bill of review. But then they related to facts, not previously in issue in the cause. He thus settled a doubt, which had long existed on this very subject; and in respect to which, there was a dictum of

Lord Eldon the other way, in Young v. Keighly, 16 Ves. 348.

Lord Chief Baron Gilbert (Gilb. Forum Rom. 186), in laying down the rules, as to granting bills of review, puts one of the requisites in these words: "Thirdly; they can examine to nothing, that was in issue in the original cause. unless it be any matter happening subsequent, which was not before in issue, or upon matter of record, or writing, not known before. For, if the court should give them leave to enter into proofs upon the same points, that were in issue, that would be under the same mischief, as the examination of witnesses after publication, and an inlet into manifest perjury." Now, if this is to be deemed a true exposition of the doctrine in courts of equity, it makes an end of the present application. The difficulty is, whether the modern decisions affirm the practice in so limited a form.

Lord Hardwicke in Norris v. Le Neve, 3 Atk. 35, said, that the rules of Lord Bacon upon bills of review had never been departed from. And, professing to give the substance of those rules, he added: "By the established practice of this court there are two sorts of bills of review; one founded on supposed error appearing in the decree itself; the other a new matter, which must arise after the decree; or upon new proof, which could not have been used at the time, when the decree passed." The ordinance of Lord Bacon is substantially as here stated; his language on the last matter is: "Nevertheless, upon new proof, that is come to light after the decree made, and could not possibly have been used at the time, when the decree passed, a bill of review may be grounded." Beames, Orders Ch. p. 2, note 3. See, also, Patterson v. Slaughter, Amb. 293. In the case of Norris v. Le Neve, the application for the bill of review was not confined to "new proof" of a mere documentary character; but it embraced other facts of an oral nature; and Lord Hardwicke took no notice of any distinction between oral and written evidence. But he did take notice, that the new discoveries amounted to no more than corroboratives only of the former points in issue. In another case (Gould v. Tancred, 2 Atk. 533), before the same great judge, no notice was taken of any positive distinction between oral and written evidence, although certainly there may be good ground for such a distinction. In Young v. Keighly, 16 Ves. 354. which indeed was an application founded on the discovery of new documentary evidence, Lord Eldon said: "As far as I can ascertain, what the court permits with regard to bills of review upon facts newly discovered (he does not say, 'documents'), the decisions appear to have been upon new evidence, which, if produced in time, would have supported the original case." He added also in the same case: "The ground is even apparent on the face of the decree; a new evidence of a fact (not saying 'written evidence') materially pressing upon the decree, and discovered at least after publication in the cause." In Partridge v. Usborne, 5 Russ. 195, the new evidence (which went to points not before in issue) was certainly largely founded in mere oral proofs and testimony; yet it was admitted. The language of Lord Eldon in Milner v. Lord Harewood, 17 Ves. 148, already cited, appears to me to confirm the conclusion, that upon rehearings and bills of review, upon newly discovered evidence, parol evidence to facts is not necessarily prohibited by any general practice or rule of law.

I had occasion, in the case of Dexter v. Arnold [Case No. 3,856], to examine this subject with a good deal of care in reference to bills of review. 1 was not, at that time, able to satisfy my mind, that the doctrine, as to the admissibility of newly discovered evidence, was limited to written evidence of a documentary nature. The subsequent authorities have not helped the matter in this particular. Upon principle it may, perhaps, be found difficult in all cases practically so to limit it; although no person is more sensible than myself of the great inconvenience and danger of admitting new evidence of a parol nature, after the former evidence in the cause has been seen; and, a fortiori, after the original cause has been heard. The reasons are well stated in Jones v. Purefoy, 1 Vern. 47, and still more forcibly in the case of Respass v. McClanahan, Hardin, 350, 351, to which 1 shall presently advert. In examining the decisions of Mr. Chancellor Kent, in which he has collected the leading English decisions on this point, not only after publication, but upon bills of review, it will be seen, that he has exhibited a strong disinclination to allow the introduction of any newly discovered evidence, merely cumulative or not of a documentary nature. This is manifested in an especial manner in Hamersley v. Lambert, 2 Johns. Ch. 432. in Livingston v. Hubbs, 3 Johns. Ch. 124, and Troup v. Sherwood, 1d. 558. Yet he is compelled to admit. that there may be exceptions to the general rule. I cannot find. however, that he has ever made a direct decision, that the newly discovered evidence of witnesses to the facts in issue is not admissible on a hearing. or rehearing, or bill of review. He has, indeed, on one occasion said, that the nature of the newly discovered evidence must be different from that of the mere accumulation of witnesses to a litigated fact. Livingston v. Hubbs, 1d. 127. But his decision did not turn particularly upon that point. The language in Taylor v. Sharp, 3 P. Wms. 371, upon which he has placed some reliance for this qualification of the doctrine, does not seem to me to have looked to any supposed difference in regard to the nature of the new matter. that is, whether newly discovered testimony. or newly discovered documents; but singly to the

fact, that it was newly discovered matter of some sort.

I have thus gone over the principal cases (with an exception, which will presently appear), which seem to me to be applicable to the more general question before the court. The result has been already incidentally suggested. But I will give it in a more direct and positive form. It is, that there is no universal and absolute rule, which prohibits the court from allowing the introduction of newly discovered evidence of witnesses to facts in issue in the cause, after publication and knowledge of the former testimony, and even after the hearing. But the allowance of it is not a matter of right in the party, but of sound discretion in the court, to be exercised cautiously and sparingly, and only under circumstances, which demonstrate it to be indispensable to the merits and justice of the cause.

I am driven, therefore, and I regret it, by this view of the matter, to the consideration of the special circumstances of the present case, and to decide, whether the court ought, upon general principles, and in the exercise of its just discretion, to grant the present petition. The objections which forcibly present themselves against it, are: (1) The great length of time since the publication of the evidence; (2) the nature of the evidence itself, being the asserted confessions of the defendant, to many of the most material points in the case, a species of evidence. of which it has been truly remarked, that it is the most easy to fabricate, and the most difficult to refute; and (3) the fact, that it is merely cumulative or corroborative testimony to the very points in issue. In my judgment, each of these objections has great intrinsic weight. The last has been thought by Mr. Chancellor Kent as of itself decisive. I find, too, that the same view of the matter has been taken by several other of the American courts, upon very solemn occasions. In Respass v. McClanahan, Hardin. 350, it was held by the court of appeals of Kentucky, at that time adorned by minds of uncommon ability, that the discovery of new witnesses to prove a matter of fact in issue in the original cause is not a ground for a bill of review. The reasoning of the court is so very full and clear on the point. that I would gladly transfer it to this opinion, if it would not occupy too large a space. Upon that occasion the court said, that after the most careful search, they could not find one case reported, in which a bill of review had been allowed on the discovery of new witnesses, to prove a fact, which had before been in issue; although there were many, where bills of review have been sustained on the discovery of records and other writings, relating to the title generally put in issue. The same doctrine has been since repeatedly affirmed by the same court, and particularly in Bowles v. South, Hardin, 460, and Head v. Head, 3 A. K. Marsh. 121. It

was also adopted and acted on by the court of appeals of Virginia in Randolph's Ex'r v. Randolph's Ex'rs, 1 Hen. & M. 180.

I am not able to satisfy myself, that this objection to the evidence is not well founded. On the contrary, the more I reflect, the more I feel the difficulty of the admissibility of merely cumulative and corroborative testimony, though newly discovered, to the facts in issue. If I were to decide in favor of its admissibility, I should, as far as I know, be the first judge, who ever acted upon so broad a doctrine. I am not bold enough to adventure upon such a course. On the contrary, if I were called upon to frame a rule, it would be to exclude all testimony of newly discovered witnesses to any facts in issue, unless connected with some newly-discovered documents. There is no authority in favor of the petition. There is authority against it. No book of practice states any thing, which leads to the conclusion, that evidence, like that now proposed, has ever been admitted at the original hearing, or upon a rehearing, or upon any bill in the nature of a bill of review. So far as the books of practice speak, they lead in the opposite direction. See Hind, Prac. 59–63; Gilb. Forum Rom. 186; Wyatt, Prac. Reg. 94–97; Id. pp. 353–355. My judgment, therefore, is, under all the circumstances, that the motion ought not to be granted.

[For subsequent proceedings in this case, see Case No. 17,954.]