[For further proceedings, see Cases Nos. 5.261 and 5,262.]

## Case No. 5,261.

### GASS v. STINSON.

[2 Sumn. 605.] [1]

Circuit Court, D. Massachusetts. May Term, 1837.

PRACTICE IN EQUITY — TESTING COMPETENCY OF WITNESSES BEFORE MASTER—APPLICATION BY PETITION—CREDIBILITY.

1. If a cause by an interlocutory decree, has been referred to the master, and either party desires to take the testimony of witnesses, in order to establish the incompetency of a witness, who has already been examined in the cause, and whose deposition was before the court, when the decretal order was passed, the application to the master must be by petition in writing, verified by affidavit.

2. If the application be founded on a suggestion, which is incorrect, in point of fact, the order to take the testimony, which was made thereon, will be superseded.

3. A party will not be allowed to give oral testimony to the contents or purport of an indictment, verdict or judgment; as the best evidence is the original paper or a certified copy.

4. If a party would object to the competency or credibility of a witness in courts of equity, he must make a special application by petition to the court for liberty to exhibit articles, stating the facts and objections to the witness. and praying leave to examine other witnesses to establish the allegations in the articles by suitable proofs: and upon this petition, leave is ordinarily granted by the court.

5. Semble. that the application may be made by motion, upon the foundation of ignorance at the time of the examination.

6. An objection to the competency of a witness cannot be made after publication, if the incompetency was known before the commission to take his deposition issued.

7. An objection to the credibility of a witness may be ordinarily made after publication and before hearing; but the interrogatories must be so shaped, as to prevent the party, under color of an examination to credit, from procuring testimony to overcome that already taken and published in the cause.

[Approved in Re Thomas, 35 Fed. 340.]

8. In the United States the usual questions asked, in order to discredit a witness, are: What is the witness's general reputation for truth? Is it good or bad?

[Cited in Teese v. Huntingdon, 23 How. (64 U. S.) 12.]

[Cited in Eason v. Chapman. 21 Ill. 38; Fletcher v. State, 49 Ind. 132.]

9. After the hearing and an interlocutory decree, a party cannot object before the master

[1] [Reported by Charles Sumner, Esq.]

to the credibility of a witness, whose testimony was read at the hearing without objection.

10. Quaere, if a party, who cross-examines a witness, knowing his interest, does not thereby waive all right of objection.

11. A witness, who has given his deposition. which has been read at the hearing, cannot be examined anew before the master, without a special order of the court.

[This was a bill in equity by Joseph Gass against Abner P. Stinson.]

This cause being before the master, under the decretal order already passed [Case No. 5,260] an application was made to the master orally, by the defendant's counsel, to take the testimony of certain witnesses, the object of which was to establish the incompetency of one Noah James as a witness, who had been examined in the cause, and whose deposition was before the court, when the decretal order was passed. The ground of the application was, that James had been convicted of larceny; that the defendant's counsel knew it before the hearing of the cause; but he then supposed, that the witness, James, had been pardoned; and that he had since ascertained, that James had not received a full pardon, so as to restore his competency as a witness. The master certified the foregoing facts to Story, J., at chambers, and also that under these circumstances he was of opinion, that the purposes of justice required, that the proposed testimony should be taken, de bene esse, saving all the rights of the plaintiff to object to the same. An order was accordingly made by Story, J., at chambers, to take the depositions of the witnesses under a commission, de bene esse, saving the rights of the plaintiff, after due notice to the plaintiff. The depositions had not as yet been taken under the commission, and a motion on petition was now made in open court by the plaintiff to supersede the order thus made.

B. Rand. for plaintiff.

W. C. Aylwin, for defendant.

STORY, Circuit Justice. As the original application to the master was made orally, the precise grounds on which it was made do not appear, except from the master's certificate. This was a great irregularity; and the application should have been by petition in writing, verified (if not ordinarily, at least in a case of this sort,) by affidavit. See Troup v. Sherwood, 3 Johns. Ch. 558, 560. The irregularity, however, was not then brought to my notice. The interrogatories, proposed to be put to the witnesses, were, however, filed in writing before the master; and an exception has now been taken to their purport and character. I shall presently have occasion to comment on them. The application to supersede the order relies upon various grounds. The first one is, that the application was founded upon a suggestion, which is wholly incorrect, to wit. that James had not received a plen-

ary pardon; whereas in fact he had received such a pardon, as appears by a copy of the instrument of pardon. This removes at once the whole of the original ground of the application, and undoubtedly entitles the plaintiff to have the order for taking the depositions superseded, since the witness was clearly competent.

But an attempt has been made to sustain the order upon the ground, that the facts to be stated by the witnesses would go to affect the credibility of James. Upon looking into the interrogatories filed, it is impossible that they can be sustained for this or any other purpose, applicable to the cause. The first three interrogatories are merely introductory, and point solely to the identification of James; and in other respects, are immaterial and irrelevant. All the other interrogatories seek to establish by the parol evidence of witnesses, that there was an indictment, trial, conviction, and sentence of James for larceny; facts, which should be proved by a production of the record itself, and which are not, in their character, proper to be established by the mere oral statements of witnesses. There is no ground, upon which a party can be permitted to testify orally to the contents or purport of an indictment, or verdict, or judgment; for the best evidence is the original paper, or a certified copy. So that if the interrogatories had been originally examined, they must have been suppressed, whether they applied to competency or to credibility.

But it is proper to say a few words, as to the time and manner of presenting objections to the competency or credibility of witnesses in courts of equity. The general course of practice is, that, after publication has passed of the depositions (though it may be before), if either party would object to the competency or credibility of the witnesses, whose depositions are introduced on the other side, he must make a special application by petition to the court for liberty to exhibit articles, stating the facts and objections to the witnesses, and praying leave to examine other witnesses to establish the truth of the allegations in the articles by suitable proofs. 1 Har. Ch. Pr., by Newland, pp. 282, 283; Hind, Pr. 374, 375; 1 Newl. Ch. Pr. 289, 290; Gilb. Forum Rom. 147, 148. Without such special order, no such examination can take place; and this has been the settled rule, ever since Lord Bacon promulgated it in his Ordinances. Ord. 72; Beames' Orders Ch. pp. 32, 187; Mill v. Mill, 12 Ves. 406. Upon such a petition to file articles, leave is ordinarily granted by the court, as of course, unless there are special circumstances to prevent it. There is a difference, however, between objections taken to the competency, and those taken to the credibility of witnesses. Where the objection is to competency, the court will not grant the application after publication of the testimony, if the incompetency of the witness was known be-

fore the commission to take his deposition was issued; for an interrogatory might then have been put to him, directly on the point. But, if the objection was not then known, the court will grant the application. 1 Har. Ch. Pr., by Newland, pp. 282, 283; 1 Newl. Ch. Pr. 289–291; Hind, Pr. 374, 375; Purcell v. M'Namara, 8 Ves. 324; Vaughan v. Worrall, 2 Madd. Ch. Pr. 322, 2 Swanst. 400. This was the doctrine asserted by Lord Hardwicke in Callaghan v. Rochfort, 3 Atk. 643, and it has been constantly adhered to ever since. See Purcell v. M'Namara, 8 Ves. 324; Vaughan v. Worrall, 2 Madd. Ch. Pr. 322. The proper mode, indeed, of making the application in such case seems to have been thought by the same great judge to be, not by exhibiting articles; but by motion for leave to examine the matter, upon the foundation of ignorance at the time of the examination. Id. But upon principle there does not seem to be any objection to either course; though the exhibition of articles would seem to be more formal, and, perhaps, after all, more convenient and certain in its results. But where the objection is to credibility, articles will ordinarily be allowed to be filed by the court upon petition, without affidavit, after publication. Watmore v. Dickinson, 2 Ves. & B. 267. The reason for the difference, is said by Lord Hardwicke, in Callaghan v. Rochfort, 3 Atk. 643, to be, because the matters examined to in such cases are not material to the merits of the cause, but only relative to the character of the witnesses. And, indeed, until after publication has passed, it cannot be known what matters the witnesses have testified to; and, therefore, whether there was any necessity of examining any witnesses to their credit. Russel v. Atkinson, 2 Dickens, 532. This latter is the stronger ground; and it is confirmed by what fell from the court in Purcell v. M'Namara, 8 Ves. 324.

When the examination is allowed to credibility only, the interrogatories are confined to general interrogatories as to credit, or to such particular facts only, as are not material to what is already in issue in the cause. The qualification in the latter case, (which case seems allowed only to impugn the witness's statements, as to collateral facts,) is to prevent the party under color of an examination to credit, from procuring testimony to overcome the testimony already taken in the cause, and published, in violation of the fundamental principle of the court, which does not allow any new evidence of the facts in issue after publication. The rule and the reasons of it are fully expounded in Purcell v. M'Namara, 8 Ves. 324, 326; Wood v. Hammerton, 9 Ves. 145; Carlos v. Brook, 10 Ves. 49, 50; and White v. Fussell, 1 Ves. & B. 151.[2] It was recognized

---

[2] The very form of the order is given in a note g to Watmore v. Dickinson, 2 Ves. & B. 268. See, also, 1 Madd. Ch. Pr. 320–325; Piggott v. Croxhall, 1 Sim. & S. 467.

and enforced by Mr. Chancellor Kent, in Troup v. Sherwood, 3 Johns. Ch. 558, 562–565. When the examination is to general credit, the course, in England is, to ask the question of the witnesses, whether they would believe the party sought to be discredited upon his oath. See Purcell v. M'Namara, 8 Ves. 324; Carlos v. Brook, 10 Ves. 49, 50; Anon., 3 Ves. & B. 93; Watmore v. Dickinson, 2 Ves. & B. 267. But see Gill v. Watson, 3 Atk. 522. With us the more usual course is to discredit the party by an inquiry, what his general reputation for truth is, whether it is good or whether it is bad. But examinations to the credit of witnesses are required to be made before the hearing; and it is quite too late to make the application after the hearing, and a fortiori after an interlocutory decree has passed upon the hearing, upon the footing of the evidence in the cause. So the doctrine was laid down by Lord Eldon in White v. Fussell, 1 Ves. & B. 151. The case of Piggott v. Croxhall, 1 Sim. & S. 467, manifestly implies the same doctrine; though the application was there made before the hearing. It seems to me, therefore, that upon this ground alone, the defendant is not now at liberty to examine witnesses before the master, to the credit of a person, whose testimony was read at the hearing without objection, the objection to his competency or credibility being then fully known. The defendant, by his conduct upon that occasion, waived the objection, and he cannot, in any subsequent stage of the cause, renew it.

But it is said, that, upon a rehearing, or an appeal from the decree at the rolls to the chancellor, new evidence is admissible to be read, which was not read at the original hearing. That may be true under particular circumstances, as where it is evidence originally in the cause, but not read; or where it is evidence newly discovered, since the hearing. On this subject, however, I do not dwell, because it was recently considered in this court in a case, which underwent a good deal of consideration. I allude to the case of Wood v. Mann [Case No. 17,953]. The case of Needham v. Smith, 2 Vern. 463, has also been relied on to shew, that a confession of a witness, which has come to the knowledge of the other party since the hearing, and which goes to his competency or credibility, is admissible on an appeal from the rolls. On that occasion it was also said, that if, after the hearing, a witness is convicted of perjury, the objection may be taken advantage of upon a rehearing. But, giving the fullest effect to this doctrine, it only applies to a case strictly of a rehearing (for an appeal from the rolls is only a rehearing. East India Co. v. Boddam, 13 Ves. 421; Buckmaster v. Harrop, Id. 456) where the whole cause is opened anew; and where the evidence is already in the cause, or has been brought out since the former hearing. The present is not such a case.

It has been suggested by the counsel for the plaintiff, that, if a defendant cross examines a witness, knowing his interest, it is a waiver of the objection. The case of Corporation of Sutton Coldfield v. Wilson, 1 Vern. 254, certainly supports this proposition. It has been thought to go farther, and to decide that a mere cross examination upon the merits is a waiver of any objection to his competency. But this has, as a matter of general practice and doctrine, been overturned by the more recent decision in Moorhouse v. De Passou, 19 Ves. 433, Coop. 300, in which it was held, that in equity the cross examination of a witness, in utter ignorance of his having given an answer to an interrogatory, showing that he has an interest in the cause, cannot amount to a waiver of the objection to his competency. In our practice, at least, where the objection is actually known, and may be taken at the time of the cross examination, it might deserve consideration, whether the case in Vernon ought not to be adhered to. But I do not, as it is unnecessary, give any opinion on this point.[3]

It is suggested, in the argument of the defendants' counsel, that James is to be examined anew before the master, without any special order of the court. If this is so, certainly it is an irregularity, and his examination upon a proper motion may be suppressed. The case of Rowley v. Adams, 1 Mylne & K. 543, is directly in point. But, if his former deposition, only is to be read in the hearing before the master, that is all proper for the evidence already in the cause is for the consideration of the master.

Upon the whole, my opinion, in every view of the matter, is, that the order ought to be superseded; and it is accordingly superseded.

[For a hearing upon exceptions to the master's report, see Case No. 5,262.]

---

[3] But see on this point Harrison v. Courtweld. 1 Russ. & M. 428, and Pigott v. Croxall, Id. 428, note.

