ISAAC WILSON, et. al.; Plaintiffs in Error,

*vs.*

THE STATE OF WISCONSIN, Defendant in Error.

ERROR TO THE COLUMBIA CIRCUIT COURT.

When a witness has been called to impeach another witness, and has testified that he is well acquainted with his general character for truth and veracity and has testified what that character is; he may be asked, whether, from such general character, he would believe the witness on oath.

The defendants were indicted for a riot, at the April term, 1853, of the Columbia Circuit Court. On the trial, exception was taken to the ruling of the court; the defendants were convicted, and have prosecuted a writ of error.

All the facts and exceptions fully appear in the opinion of the court.

*D. J. Pulling,* for the plaintiffs in error.

*G. B. Smith,* Attorney Gen'l, for the defendant in error.

*By the Court,* CRAWFORD, J.  From the bill of exceptions in this case, we find that upon the trial in the Circuit Court, the defendants sought to impeach the credibility of a witness who had been examined on the part of the State, and who had given evidence material to the prosecution.  For this purpose they called Chauncey Spear, who testified that he had known the witness, who had been examined on the part of the State, during sixteen years, and was acquainted in the neighborhood where the witness resided, that he (Spear) had the means of knowing the

general reputation of the witness among his neigh-
bors and acquaintances, for truth and veracity, and
that from such general reputation the character of
the witness was bad. Spear also testified to the gen-
eral reputation of the witness in respect to "other
moral disqualifications." The counsel for the defend-
ants thereupon asked the witness Spear, whether, from
the *general character* of the prosecuting witness (Me-
loy,) he would believe him upon oath ; which question
was objected to by the counsel for the State, and the
court sustained the objection, and decided that "wit-
nesses could not be enquired of as to whether they
would believe the witness sought to be impeached,
even after they had testified that his general charac-
ter was bad, from general reputation."

A verdict of guilty having been rendered against
three of the defendants, they prosecute the present
writ of error, and the point presented for our de-
cision is, whether the impeaching witness ought to
have been permitted to answer whether, from the
*general character* of Meloy, he (the impeaching wit-
ness,) would believe him under oath.

We have no doubt upon the subject. Mr. Starkie
in treating of the means by which the credit of a
witness may be impeached, says : "The proper ques-
tion to be put to a witness for the purpose of impeach-
ing the general character of another witness is, wheth-
er he would believe him upon his oath." (1 *Stark.
Ev.* 182.) And Mr. Phillips, in his work on the law
of evidence, (1 *Phil. Ev.* 292,) defines the rule thus :
"The regular mode of examining into general charac-
ter, is to inquire of the witnesses, whether they have
the means of knowing the former witness' general

June Term
1854.

Wilson
et al.
vs.
The State.

character, and whether from such knowledge, they would believe him on his oath."

In Mr. Greenleaf's treatise on evidence (vol. 1, sec. 561,) it is said : "The regular mode of examining into the general reputation is, to inquire of the witness whether he knows the general reputation of the person in question among his neighbors ; and what that reputation is."

In the English courts, the course is further to inquire whether from such knowledge the witness would believe that person upon his oath. In the American courts the same course has been pursued, but its propriety has of late been questioned, and perhaps the weight of authority is now against permitting the witness to testify as to his own opinion."

In the judicial investigation of matters of fact, the paramount object is, to ascertain the truth, and it is of the utmost importance that the channels through which information is obtained, should be pure and reliable. Hence it is esteemed unsafe to depend upon the statements of a witness whose general character and reputation is such as to destroy confidence in the correctness of his statements when under oath. When the source is polluted, the stream cannot be pure.

But, although it is readily conceded, that in a legal as well as in a moral view, the corruptness of a man's character ought to impair the reliance to be placed upon his testimony ; yet, courts have differed in regard to the means of inquiring into and informing a court or jury of the truthfulness of a witness.

The rule has long prevailed in the courts of this country and of Great Britain, to inquire whether the witness called to testify as to the character of another

witness, would believe that other witness under oath.

In some recent cases in American courts, this inquiry has been excluded on the ground that a witness should not, in general, be permitted to state his own *opinions* to the jury, but should depose as to *facts* only, and the rule of evidence is familiar, that with certain well known exceptions, such as experts, &c., the opinion of witnesses is not admissible. But it is to be observed that the inquiry to the witness is not calculated to limit the extent of credibility to be given to the witness sought to be impeached, but only to evince the fact that he, (the impeaching witness) would not believe him under the obligation of an oath, and thereby to inform the jury as to the degree of reliance which the persons acquainted with the impeached witness would place upon his sworn statements. What greater or more convincing evidence of a man's utter unfitness to testify or speak the truth in a matter concerning the lives, liberties or property of his neighbors, can be produced, than the solemn statement of those who know him and are acquainted with his general character and reputation, that they would not believe him upon his oath? When the witness answers that he would not believe the person sought to be impeached, he but states the result of his own mind—the conviction produced upon him by the common reputation sustained by the person, and in no proper sense can this be viewed as an *opinion*, any more than the result of observation, experience or reason, to which witnesses in almost every case, very frequently depose in answering questions.

We have looked into the cases cited by Professor Greenleaf, in support of the objection to the question whether the witness would believe the person sought

52

to be impeached under oath, and will refer to them briefly. In *Gars vs. Stinson*, 2 *Sumn.*, 605, Mr. Justice Story says : "When the examination is to general credit, the course in England is, to ask the witnesses whether they would believe the party sought to be discredited upon his oath. With us the more usual course is, to discredit the party by the inquiry, what his general reputation for truth is; whether it is bad." He does not here take the ground that the question is objectionable, but merely that the *more usual course* is to omit it.

The case of *Kimmel vs. Kimmel*, *Serg. & R.*, 336, only decides that the impeaching witness must testify to the general character of the party for truth. Judge Gibson, in that case said : "The witness is to give, not his own judgment of the matter, but the aggregate result of at least a majority of the voices he has heard ; or in other words, (for after all, there is no more plain or practical exposition of the matter,) he must state what the common report is among those who have the best opportunity of judging of the habits and integrity of the person whose character is under consideration." The question objected to in this case was, "what is the general reputation of P. K. in the county of Somerset, as a man of truth?" and the court held that it was proper, and in the opinion of Judge Duncan, where he says "opinion will not be evidence, for if it was, no witness would be safe from the shafts of calumny," it is observable that he is distinguishing general reputation from "individual knowledge."

In *Wilks vs. Lightner*, 11 *Serg. & R.*, 198, the second question put to the witness (whose *deposition* was offered in evidence,) was, "Have you ever heard

*of others* whether he was a dishonest man or bore a bad character ?" which was answered thus : " I heard others say he was a bad fellow." Then followed the inquiry : " Would you believe him on his oath ?"

Chief Justice Tilghman, in giving the opinion of the court, approved of the decision in *Kimmel vs. Kimmel*, and held the second interrogatory *too narrow*, because it called for the view of *others*, which might be a *few* persons, and did not relate to *general character ;* but in regard to the third interrogatory, he held " that direct answer would not be objectionable, provided the belief was founded upon the witness' knowledge of his general character, otherwise it would be nothing to the purpose."

The opinion of Mr. Justice Shipley, in *Phillips vs. Kingfield*, 9 *Maine R.*, 375, is certainly the most forcible exposition of the reason to be urged against permitting the witness to state whether he would believe the party upon oath, which we have been able to find. He says it would be " to allow the prejudices, passions and feelings of that witness, to form, in part, at least, the elements of their (the jury's) judgment." While it must be admitted that these prejudices, passions and feelings *may* operate upon the witness, and perhaps warp his judgment or belief, yet the same feelings may have full scope and effect upon any witness in testifying upon any other subject, and the means of detecting and thwarting the evil consequences of such a witness' testimony, are as available to the party likely to be affected by it, and by the jury, in the one case as in the other.

The great weight of authority is in favor of permitting the witness to state his belief founded upon *general reputation*, and upon that only. The cases, both

American and English, are to be found cited in the several text writers, and especially in *Cowen & Hill s notes to Phillips on Evidence, vol.* 4, *p.* 754, *note* 388.

In the present case the witness had known the other party during sixteen years; had stated that he knew his general reputation for truth, among his neighbors, and that his general character was bad. Having so testified, we believe he should have been permitted to answer, whether, from that reputation and character, he would believe him under oath.

The court erred in excluding this evidence, and the judgment must therefore be reversed, and a *venire facias de novo* awarded.