GERTRUDE E. HUNTINGTON LATE GERTRUDE E. WEBB, ADMINISTRATRIX OF THE ESTATE OF N. WEBB, DECEASED, AND DAVID L. HUNTINGTON v. WILLIAM H. MOORE AND WILLIAM C. MITCHELL.

MATTERS OF DEFENSE NOT RESPONSIVE TO BILL, HOW SET UP.—Matters of defense in a suit not strictly responsive to the bill must be set up by a cross-bill, and not in the answer.

MOTION TO AMEND PROPERLY REFUSED, WHEN.—The overruling of a motion of the defendants to amend their answer to a bill so as to add, as a party to the suit, the complainant's husband, she having intermarried with him after the commencement of the suit, is not erroneous, where such party has already been added on the motion of the complainant.

ANCILLARY LETTERS OF ADMINISTRATION NOT REVOKED, HOW.—Where letters of administration granted in another state, where the intestate was domiciled, are revoked, such revocation does not affect ancillary letters which have been, in the mean time, taken out in this territory by the same person, nor is a suit previously brought by such administrator in this territory on behalf of the estate abated by such revocation.

WAIVER OF OBJECTION AS TO MARRIAGE OF FEMALE PLAINTIFF.—Where a female plaintiff in a suit in equity marries pending the suit, and the defendant afterwards moves to amend so as to make the husband a party, he thereby waives any objection that the suit ought to have been dismissed because of such marriage, although the motion is overruled because the husband has already been made a party on the complainant's motion.

MARRIAGE OF ADMINISTRATRIX, EFFECT OF.—The marriage of an administratrix, plaintiff in an equity suit, it seems, merely suspends the suit until the husband is made a party, while at law it puts an end to the action.

SUFFICIENCY OF ADMINISTRATOR'S BOND DOES NOT AFFECT SUIT.—The question as to whether or not an administrator has given a sufficient bond is not one with which a court of equity, in which such administrator has sued, has anything to do.

FAILURE TO OBJECT TO DRAFT REPORT OF MASTER IN CHANCERY.—Where a party to a suit in chancery, which has been referred to a master, refuses to comply with the master's summons to appear and file objections to his draft report, it is the settled practice that no objection made by such party to the report after it is filed will be heard.

RULES OF UNITED STATES SUPREME COURT NOT APPLIED TO TERRITORIAL COURT.—None of the rules adopted by the United States supreme court, except the ninety-second, apply to territorial courts. Therefore, rule 83, giving thirty days to except to a master's report, has no application to those courts.

CONSOLIDATION OF CROSS-SUIT AND ORIGINAL SUIT.—There is no such thing in equity practice as consolidating the issue, raised. by a cross-bill and answer with those raised by the original bill and answer, although the bill and cross-bill may be heard together.

ORDER CLOSING PROOFS.—The supreme court will not disturb a decree in the court below, because that court made an order to close the proofs five months after the issues were made up, where no abuse of discretion appears.

DEPOSITION NOT SUPPRESSED WHICH CONTAINS SOME LEGAL EVIDENCE.—It is not error to refuse to suppress a deposition as a whole, when a part of the evidence contained in it is legal.

REFUSAL TO SUBMIT QUESTION TO JURY IN EQUITY SUIT.—It is within the discretion of a court of equity to submit a particular question of fact to a jury, but its refusal to do so is not error, particularly after a reference of the whole case to a master, and a finding by him on that question, as necessarily involved in his report.

MATTER NOT RESPONSIVE TO BILL MUST BE PROVED.—The rule in equity is that matter in an answer not responsive to the bill must be proven, even though the answer is sworn to.

MASTER'S FINDINGS OF FACT NOT REVIEWED.—The supreme court on appeal from a decree, will not review findings of fact in the master's report in the court below.

APPEAL from the district court of the first judicial district. The opinion states the case.

*Tompkins and Noble,* for the defendants and appellants.

*Elkins and Wheaton,* for the plaintiffs and appellees.

By Court, WATERS, J.:

This is a proceeding in chancery. The complainant, Gertrude E. Huntington (late Webb), filed her bill in chancery

on the twenty-second day of January, 1869, in the clerk's office of the first judicial district of this territory, against the defendants, and on the same day and year filed a supplemental bill. The object of the bill is to obtain a settlement of the interest of N. Webb, deceased, in the firms of Wm. H. Moore & Co., and N. Webb & Co., of which firms N. Webb is stated to have been a joint and equal partner with defendants, and doing business under the name and style of Wm. H. Moore & Co., at Fort Union, N. M., and under the name and style of N. Webb & Co., in Southern New Mexico, and at Franklin, Texas. The bill alleges that complainant, Gertrude E. Huntington (late Webb), was the wife of N. Webb, deceased, at the time of his death, and that he died at Franklin, El Paso county, Texas, October 15, 1866, and that she took out letters of administration of his estate before the probate court of said county of El Paso; and that afterwards ancillary letters of administration were granted her by the probate court of Mora county, N. M.; and that the defendants and the deceased entered into a copartnership some time in the year 1859, for the purpose of carrying on and transacting the business of post suttlers at Fort Union, N. M., and also general dealers in merchandise, and contractors, etc., for supplying troops stationed at the various military posts in the territory of New Mexico; and that said Webb put into said firm the sum of fifteen thousand dollars.

Complainant then alleges that she believes the terms of said copartnership were reduced to writing, and that, if not lost or destroyed, it is in the possession and under the control of the defendants, as it never has been in the possession of complainant; and that early in 1863 said copartnership was extended to Las Cruces, N. M., and El Paso county, Texas, under the style and name of N. Webb & Co., and that in both of these firms said Webb was an equal partner in the profits and losses. The bill charges that both of these firms were making large sums of money annually clear of expenses. It also sets forth that complainant made repeated efforts to obtain a settlement of the interest of said Webb, in the above-named firms, subsequent to his death and be-

fore the filing of her bill, but without avail.   The bill also
sets forth that complainant, Gertrude E. Huntington (late
Webb), is the sole heir at law of said Webb, deceased.
The bill is very lengthy, and contains many statements
concerning the property of the firms, and the amounts of
goods and money on hand at the time of the death of said
Webb.

To this bill defendants filed separate answers, although
in substance the same.   The answers deny that defendants
entered into a copartnership with said Webb, in 1859, for
the purposes specified in the bill; but sets forth the fact to
be, that the defendants entered into a copartnership with
said Webb for the purpose of carrying on a mercantile busi-
ness as post sutlers, at Fort Union, New Mexico, said
Webb to receive an interest of one eighth of the profits of
said business for his business talent and for keeping the
books and acting as cashier, and that said copartnership did
not commence until May, 1861.   The answer then denies
that said Webb, at the time stated in said bill, paid into
said copartnership the sum of fifteen thousand dollars, or
any other sum whatever; and denies that said Webb was an
equal partner in the business and to share equally with the
defendants in the business; and denies that the terms of the
copartnership were reduced to writing.   The answer admits
that from the commencement of the business in southern
New Mexico and Franklin, Texas, as stated in the bill, un-
der the name and style of N. Webb & Co., the defendants
and said Webb were to share equally in the profits and
losses of said business; but that in the business carried on
at Fort Union, New Mexico, under the name of W. H.
Moore & Co., said Webb was only to receive one eighth
interest.   The answer is very long, and contains very many
statements that are immaterial in the consideration of this
cause.

To the answers of defendants, complainants filed replica-
tions.

The bill and exhibits, together with defendants' answers
and exhibits, and everything pertaining to the cause, was,
by a decree of the court below, on application of complain-

ants, referred to a master in chancery, "to take and state the accounts mentioned in the pleadings in this cause, and especially to take and state the accounts of the late firms of W. H. Moore & Co., Moore, Adams & Co., and N. Webb & Co., with the estate of N. Webb, deceased." The master was given full power under the decree to do and perform everything necessary to a full and complete investigation of the interest of N. Webb, deceased, in the above firms.

In pursuance of this decree the master appears to have proceeded to an investigation of the interest of N. Webb, deceased, in the firms above named, having before him during the investigation the solicitors for complainants and respondents, and after having heard the proofs and an examination into the affairs of said firms, makes his report to the effect that the interest of N. Webb, deceased, in the above firms of W. H. Moore & Co. and N. Webb & Co. was one third interest and that the estate of N. Webb, deceased, was entitled to one third of the net assets of the firms of W. H. Moore & Co. and N. Webb & Co., which amounted to the sum of ninety-seven thousand five hundred and ninety-six dollars and nineteen cents, at the time of making his report, which was August 20, 1870.

The record shows a considerable mixing up of exceptions and objections to the report, which will be considered hereafter in their proper order. During the progress of the cause the complainant, Gertrude E. Webb, intermarried with David L. Huntington, and on motion of the complainant the pleadings were amended accordingly and the cause allowed to proceed in the name of Gertrude E. Huntington, administratrix, etc., and David L. Huntington.

The court below confirmed the report of the master and entered up a decree accordingly. The defendants moved the court to set aside the decree and grant a rehearing, which was overruled. Defendants then appeal to this court, and assign thirty-six causes for error why the decree of the court below should be reversed and complainant's bill dismissed.

The assignment of errors we will endeavor to consider as near as we can in the order in which they have been pre-

sented in the bill of errors. Before considering them, how-
ever, we desire to say now, that in the consideration of the
cause before us, we will treat, as surplusage, everything in
the bill that pertains to matters outside of what we ·con-
ceive to be the real object of the bill—a settlement of the
interest of N. Webb, deceased, in the firms of W. H. Moore
& Co. and N. Webb & Co. Consequently all that portion
of the bill pertaining to the alleged heirship of Gertrude E.
Huntington in and to the personal estate of N. Webb, de-
ceased, will not be considered.

That is a question which more properly belongs to
another proceeding after the interest of N. Webb, deceased,
shall have been ascertained. It has nothing to do with the
real object of the bill, and should not have been coupled
with it. In like manner whatever may appear in the
answers of defendants as responsive to that part of com-
plainant's bill will be treated in the same way, and likewise
the issues raised by the replication to said answers, which
are altogether outside of the object of the bill. The chan-
cery practice is that matters of defense not strictly respon-
sive to the bill must be set up by a cross-bill, and not in
the answers to the bill of complaint. With these observa-
tions we will now proceed to consider the alleged errors,
except such errors as may be based on the heirship of com-
plainant, and which we have regarded as surplusage.

The fifth cause of error assigned is; that "the court be-
low erred in overruling the motion of defendants to amend
their answer." By an examination of the record it will be
found that the complainant filed a motion suggesting the
marriage of complainant with David L. Huntington, and
asking that the said David L. Huntington be made a party
to the bill, and that the bill and proceedings in the cause
proceed in the name of Gertrude E. Huntington, adminis-
tratrix of the estate of Webb, deceased, and David L.
Huntington, which motion was sustained. The motion of
defendants referred to in this assignment of error was made
for the same purpose, and subsequent to the motion made
by complainant for that purpose. The motion was there-
fore properly overruled, as the object sought to be accom-

plished by said motion was already accomplished by the
court sustaining the motion of complainants. In the over-
ruling of the motion, then, the court below committed no
error.

The seventh cause of error assigned is, "that the court
below erred in not dismissing the bill, for the reasons that
the bill charges that the letters of administration granted
on the estate of N. Webb, deceased, in Mora county, New
Mexico, were ancillary to letters of administration granted
in El Paso county, Texas, and that it appears in proof that
the letters of administration granted in Texas had been
revoked by the probate court of El Paso county, and that
the letters of administration granted in Mora county, New
Mexico, became inoperative and void."

We can not see that the revocation of the letters of ad-
ministration granted to complainants by the probate court
of El Paso county, Texas, necessarily abates this suit. For
all that appears to this court, letters of administration *de
bonis non* may have been granted to some other person by
the probate court of El Paso county, Texas, on the revoca-
tion of the letters to complainant, and the ancillary letters
remain and be of such binding force and effect as if no
revocation had taken place. It by no means follows that
ancillary letters of administration become inoperative and
void upon a revocation of the original letters of adminis-
tration granted by the probate court of the county where
the deceased was domiciled. Courts of equity can not be
thus robbed of their jurisdiction by the action of a probate
court in a neighboring state or territory; neither can a per-
son holding ancillary letters of administration be deprived
of the power of administering on the estate, within the
jurisdiction of the probate court granting ancillary letters,
in any such way. On final settlement of administration
under ancillary letters, the administrator will be required
to account to the administrator holding letters of adminis-
tration from the court where the deceased was domiciled,
and not before. There was no error committed by the court
below in refusing to dismiss the bill. There would have

been error had the bill been dismissed under such a state of facts.

The eighth error assigned is, that " the court below refused to dismiss the bill, for the reason that the records show that the suit had abated by the marriage of Gertrude E. Webb with David L. Huntington, and no new letters of administration had been taken out in the name of Gertrude E. Huntington and David L. Huntington, her husband, nor any new bond given as such administratrix." As before stated, complainant suggested her intermarriage with David L. Huntington, and asked that he be made a party to the bill, and that the proceedings in the cause be carried on in the name of Gertrude E. Huntington, administratrix, etc., and David L. Huntington. Defendants subsequently moved the court for the same purpose, which motion was overruled, the overruling of which was assigned as error, and has been already considered. The defendants by this action, as appears of record, waived whatever error there might be, by asking that David L. Huntington, her husband, be made a party to the proceedings, thus acknowledging the right of the cause to proceed as above referred to. If defendants seek to take advantage of this, it should have been done at the time the marriage was suggested, and in the proper manner, and then this court could examine into the error, if error was committed. Outside of this, however, it appears to be pretty well settled in equity practice, that when a *feme sole* is administratrix, and marries during the pendency of the suit, the suit is only suspended in its progress, until such time as the husband is made a party thereto, when the cause proceeds.

The rule is otherwise at law. An abatement in the sense of the common law is an entire overthrow or destruction of the suit so that it is ended. In the case before us the record shows that steps were taken to have the bill amended on the intermarriage of Gertrude E. Webb with David L. Huntington. That a new bond should have been given by Gertrude E. Huntington, administratrix, etc., and her husband, David L. Huntington, is a question we hold this court has nothing to do with. The matter of the bond belongs

to the probate court under whose jurisdiction the estate is; and it is for the parties interested in the distribution of the estate and the proper probate court to settle whatever question may arise as to the sufficiency of an administrator's bond.

The ninth cause of error assigned is, " that the court below erred in overruling the motion to grant to the defendants thirty days in which to file their exceptions to the master's report." The disposition of this alleged error, will carry with it several of the other errors assigned and not yet disposed of, and settle one of the principal points in this case. As before stated, the bill, answers, etc., were referred to a master in chancery. By reference to the record it will be found that the master, after having heard and examined all matters referred to him, served, upon the solicitors of the respective parties, notice to appear before him and make objections, if any they had, to his then draft report, giving them four days in which to file objections before making his final report. In response to this notice the counsel for defendants deny the right of the master to summon the defendants before him for the purpose of filing objections, and tells him that by the rules of the supreme court of the United States, they have thirty days in which to file exceptions after he has filed his report in the office of the clerk in which the suit is pending. The defendants having refused and failed to obey the summons of the master in appearing and filing objections to his draft report, the master proceeds and files his report in the office of the clerk of the court below.

On the filing of this report by the master, the counsel for the defendants moves the court for thirty days' leave in which to file exceptions thereto, which motion the court refuses. By the chancery practice, it is the duty of the parties, when summoned to appear before the master and file objections, if any they may have, to his draft report, as no exceptions on the hearing of the report will be considered except those based upon objections made to the master's draft report. The defendants, in the case before us, refused to appear and file objections to the master's draft report,

and attempted to file exceptions to the report as filed by the master in the clerk's office, which the court below refused to have done, and we think properly.   The practice is well settled that if no objections are filed to the master's draft report, no exceptions to the report will be entertained by the court.

The authorities on this point are numerous, and the practice so well settled that we deem it unnecessary to make any reference to them.   And counsel for the defendants in the court below appear to have arrived at the conclusion, and present to the court the petition of defendants, asking the court to grant them leave to now file objections to the master's report, and in their petition state that if this permission is granted them, "they will at once, and within such time as the court or master in chancery may indicate, file their objections to the report of the master in chancery, for his action and the action of the court thereon."

This petition was supported by the affidavits of the counsel for the defendants, showing what the practice in chancery had been in this territory.   On this petition and affidavits of counsel, the court below granted this request, and ordered that the report be referred back to the master, with liberty to the defendants to file their objections to the same, and authority to the master to consider the same, and with the consent of counsel of defendants, further ordered, "that this cause is set down for hearing on Monday next, on the pleadings, proofs, the master's report, and the exceptions thereto, if any there be."

In pursuance of this order, the master read the report. Counsel for defendants appeared before him and filed their objections to the same, and the record shows that some of the objections were sustained by the master, and others overruled.   The master, after having passed upon the objections, filed his then draft report in the office of the court below.   Immediately on the filing of this report, counsel for defendants moved the court for thirty days in which to file their exceptions to the master's report.   After defendants' agreeing to have the cause tried on a day certain, it was asking the court indirectly to defeat, vacate, and

set aside its own order, made at the solicitation of defend-
ants' counsel, by referring the report back to the master,
and setting the cause down for hearing on a day certain,
"on the pleadings, proofs, the master's report, and the ex-
ceptions thereto, if any there be." No court having any
respect for its own records, for the dignity and purity of
a court of equity and the enforcement of justice, would for
a moment entertain such a motion as presented by the coun-
sel for defendants in this cause. Counsel for defendants
claim that by the eighty-third rule of the supreme court of
the United States, they have thirty days in which to file
their exceptions to the master's report.

In our opinion, this rule has no application to the courts
of this territory, and was not so intended. There is but
one rule among the number that has any reference to courts
in territories, and this is the ninety-second rule. The rules
referred to by counsel are for the government of the circuit
courts of the United States, when acting as courts of equity;
and by reference to the first, second, and third rules it will
be observed that the rules promulgated by the supreme
court of the United States are not, nor can be, applicable
to the practice in courts of this territory. It is claimed,
however, that the district courts of this territory are re-
garded as circuit courts of the United States. The district
courts of this territory, by the organic act, exercise the same
jurisdiction in all cases arising under the constitution and
laws of the United States, as is vested in the circuit and
district courts of the United States, and in one sense may
be regarded as circuit and district courts, and when the
rules prescribed for the government of these courts are ap-
plicable to the practice in this territory, they no doubt will
be governed thereby. The courts of this territory are
clothed with sufficient power to prescribe and enforce their
own rules.

If we were to presume anything in connection with this
motion asking for thirty days in which to file exceptions to
the master's report, it would be, that it was interposed for
delay, for it appears from the record that on the overruling
of the motion, exceptions were immediately filed. On a

full examination of this alleged error, we are unable to see that there was error committed by the court below, in over-ruling the motion asking for thirty days, or that any injustice has been done the defendants by the overruling of said motion. The tenth and thirty-fourth causes of error assigned relate to the same subject, and will be considered together. They are to the effect, that the court below erred in over-. ruling the motion to consolidate with this suit the cross-bill of defendants against complainants and one Joab Houghton, and in not disposing at the same time of the issues raised upon the cross-bill and answers thereto.

If it is not understood, it may as well now be, that there is no such a thing known in chancery practice as a consolidation of the issues raised by a cross-bill and answers with the original bill and answer. To permit such a proceeding would be contrary to every precedent in chancery practice, and an attempt to defeat the very ends for which courts of chancery were instituted, by a confusion of issues, parties, and pleadings.

The cross-bill in the case before us brings into this suit a new party and new issues, and in fact is an original bill. In such a case, what is to be done? Counsel for defendants say, Consolidate these causes, regardless of consequences. This we are not inclined to do, but will allow the cross-bill, if cross-bill it can be called, and the issues thereon raised by the answer, to be heard in accordance with the well-settled rules of chancery practice. Either party might have moved the court below so that the original and cross-bill, if cross-bill it could be, might have come on for hearing at the same time. This is the usual practice. In the case before us, however, no such motion appears to have been made, and the parties elected to proceed with the hearing of the original bill. In refusing, then, to consolidate the cross-bill and answer with the original bill and answer, we can see no error or injustice done to either party.

The twelfth cause of error assigned is, that "the court below erred in granting the motion of complainant for an order closing the proofs of this cause." By an examination

of the record it will be found that the issues in the case before us were made up on March 23, 1870, on the filing by complainants of their replication. The motion to close the proofs was made on the fifteenth of August, 1870, nearly five months after issue joined. This would appear to be plenty of time for the parties to take the proofs, and is much longer than is given by many of the state courts in chancery proceedings. The motion to close the proofs was a mere formal motion, addressed to the discretion of the court, and we may presume that the court below, having in its possession all the facts and circumstances of the case, exercised its discretion for the advancement of justice. Nothing on the record appears to the contrary, and we are not disposed to interfere with the discretionary powers of a court, when the record does not disclose an abuse of that power.

The thirteenth, sixteenth, and eighteenth errors assigned have been disposed of in the consideration of the ninth, and need no further notice here. The fourteenth and seventeenth causes of error assigned are to the effect that " the court below erred in overruling a motion of defendants to suppress the depositions of one Joab Houghton and W. R. Shoemaker, filed as evidence in the cause." This motion, we think, was properly overruled, for the reason that said depositions contained evidence that could not well be suppressed under the rules of evidence. The motion went to the entire deposition, and the court could not undertake to suppress them when it was apparent on the face of the depositions that a part of the evidence contained in them was legal. Subsequent to the motion, defendants filed other motions to suppress certain portions of the depositions of said Joab Houghton and Shoemaker, which motions were in part sustained, leaving the depositions, as we think, free from all exceptions and irrelevant matters.

The fifteenth cause of error assigned is, " that the court below erred in overruling the motion of the defendants to refer the disputed fact of the interest of N. Webb, deceased, in the firm of W. H. Moore & Co., at Fort Union, N. M., to be passed upon by a jury as to that fact." This was

wholly within the discretion of the court, and if the court had any doubts as to the propriety of submitting such a question, and from its own knowledge of the facts and circumstances of the whole case, that it was not proper that it should be submitted to a jury, we can see no good reason for interfering with that discretion. The authority of the master, under the decree of reference, to ascertain what interest N. Webb, deceased, had in the firm of W. H. Moore & Co., was incidental to a full discharge of his duty, and was absolutely necessary for the execution of the decree of reference and the pleadings in the case. The master having ascertained what that interest was, there could be no necessity for submitting this question again to the jury. This motion, like the one above referred to, if it meant anything, meant delay, and the court below, in the exercise of its discretionary powers, properly overruled the same.

The remaining errors assigned, except errors two, three, and thirty-six, relate principally to the confirmation of the master's report; hence will be considered together. They all resolve themselves into one question, which is, should the master's report have been confirmed? Counsel for defendants have, in a very able manner, presented numerous authorities to show that the court below erred in the confirmation of the master's report, and entering up a final decree. We have carefully examined most of the authorities referred to, and have bestowed a vast amount of labor in the consideration of this question, and although some of the authorities referred to have some bearing upon the question before us, yet we are unable to see that any error has been committed or injustice done to the defendants, that would justify this court in reversing the decree. We might stop here and pronounce the judgment of the court; but as there were some questions raised in connection with the master's report which deserve notice, we will briefly give our reasons for having arrived at the conclusion just stated above. Counsel for defendants claim that there was no evidence in the case before the master that would justify him in arriving at the conclusion that N. Webb, deceased, had

a one third interest in the firm of W. H. Moore & Co. The bill charges that Webb had one third interest in this firm.

The answer denies this, and alleges that he had but one third interest in the firm of N. Webb & Co. and one eighth interest in the firm of W. H. Moore & Co. This averment in the answer of one eighth interest in the firm of W. H. Moore & Co. is not responsive to the bill, and under the rules of equity practice must be proven. The fact that the answer is sworn to does not affect this principle of having to prove strictly every matter not responsive to the bill: See Brightly Dig. 314, 858, and authorities there cited, and 2 Sumner, 489. While the rule is, that it takes two witnesses to overcome a sworn answer when responsive to the bill, yet it is well settled that when not responsive the averments in the answer are not entitled to any more weight than the averments in the bill 1 Wall. 423, 684. The answer then of itself not being conclusive as to the one eighth interest in the firm of W. H. Moore & Co., the master, under the pleadings, was compelled to find the interest to be one third or one eighth, and, in arriving at a conclusion, had to be governed by the evidence brought before him. He reports the interest of N. Webb, deceased, to be one third in the firm of W. H. Moore & Co. This report is based upon the finding of the facts before him, and this court will not review the report of the master as to his finding of the facts, only for error of law appearing in the report.

The thirty-sixth cause of error assigned is for error on the face of the record. In the consideration of this error we have given the record a full and thorough examination with the following result: The first error apparent on the face of the record to be considered occurs on schedule A, annexed to the master's report. The error is merely clerical, and appears patent upon the face of the report. In marshaling the assets of the firm of N. Webb & Co., the master charged as assets the sum of seventy-six thousand one hundred and five dollars and sixty-three cents,

as debts due and owing to the firm at Webb's death, that being the total shown by exhibit A filed by defendants as a statement of debts due and owing. In this sum was included the amount of "expense account" and "train account," which were assets, and which were deducted from the amount of exhibit A aforesaid, and properly determined the actual amount of debts due and owing to the firm at fifty-six thousand two hundred and twenty-one dollars and fifty-six cents. In making the calculation of fifty per cent. of debts to be allowed as uncollectible, the master deducted the amount of the accounts of N. Webb and wife from the amount of the original statement of debts, instead, as it should have been, from the actual amount of debts found by deducting "expense account" and "train account" from the amount of said statement as above stated. The master thus allowed for uncollectible debts fifty per cent. of forty-seven thousand seven hundred and sixty-two dollars and forty-six cents instead of fifty per cent. of twenty-seven thousand eight hundred and seventy-eight dollars and ninety-nine cents; thus allowing as uncollectible fifty per cent. of "expense account" and "train account," which were not charged or regarded as assets. In other words, crediting these accounts in full once and fifty per cent. of them again. This correction being made, makes the amount to be deducted from gross assets of N. Webb & Co. fifty-nine thousand and sixty-four dollars and forty-four cents, instead of sixty-nine thousand and six dollars and eighteen cents, as stated by the master, and leaves net assets ninety-six thousand five hundred and sixty-one dollars and seventy-three cents, and the amount due N. Webb at his death from the firm of N. Webb & Co. three thousand eight hundred and forty-four dollars and sixty-seven cents, instead of five hundred and thirty dollars and seventy-six cents, as found by the master.

The second error on the face of the record to be considered occurs in schedule B, annexed to the master's report, and consists in charging as assets of W. H. Moore & Co., goods, wares, etc., on hand at Webb's death, ninety-four thousand seven hundred and fifty-eight dollars and

sixty-one cents, the consideration due for which is included in a statement of debts due and owing to the firm, filed by defendants with their answers, and included in amount found as assets. The amount due from Moore, Adams & Co., for goods, etc., being considered as assets, it was error to charge also the value of goods for which such payment was due. The responsibility for this error clearly rests with the defendants. They having furnished exhibits and statements, as appears of record, showing amounts with which the respective firms were chargeable; the master had a right to regard such exhibits as fair to the parties filing the same, and they not being objected to by complainant as unfair or imperfect exhibits, it was reasonable and proper for the master to take the totals, without scrutinizing the items of such exhibits. These errors appear never to have been referred to in the proceedings before the master, and no objections or exceptions to the same were taken in the court below; mention of it was first made in this court. The error is chargeable to the defendants alone. But equity requires its correction. The deduction of the value of the goods, wares, etc., chargeable as assets from the total of assets found by the master, leaves gross assets, three hundred and ninety thousand four hundred and eighty-five dollars and seventy-seven cents, and net assets, two hundred and thirty-six thousand three hundred and sixty-three dollars and sixty-three cents, of which N. Webb's interest, and the amount due his estate at his death from the assets of the firm of W. H. Moore & Co., after deducting the amount of accounts of W. H. Moore & Co. against N. Webb and wife, was fifty-seven thousand seven hundred and thirteen dollars and twenty-one cents, to which add amount due from assets of N. Webb & Co., three thousand eight hundred and forty-four dollars and sixty-seven cents, makes total due N. Webb at his death the sum of sixty-one thousand five hundred and fifty-seven dollars and eighty-eight cents.

Another error appears, which appears necessary to be corrected. The master charged interest commencing two years after the death of N. Webb. Interest should have

been charged from six months after his death. The account, properly stated, stands thus:

| | |
|---|---:|
| Amount due N. Webb's estate from assets of N. Webb & Co., at time of Webb's death .... | $ 3,844 69 |
| Amount due at same date from assets of W. H. Moore & Co...... ........................ | 57,713 21 |
| Total due N. Webb at his death, which was October 15, 1866.......................... | $61,557 88 |
| Interest on this amount from April 15, 1867 (six months after death of N. Webb) to August 20, 1870 (date of master's report), at six per cent. per annum........................ ........ | 12,362 87 |
| Total................................. | $73,920 75 |
| From this deduct $1000, paid by defendants to complainant by order of court made October 11, 1869............................ ...... | 1,000 00 |
| Leaves due estate of N. Webb, deceased....... | $72,920 75 |

So that the decree of the court below should have been for seventy-two thousand nine hundred and twenty dollars and seventy-five cents, instead of ninety-seven thousand five hundred and ninety-six dollars and nineteen cents, as found by the master, and decreed by the court.

We now come to the second and third causes of error assigned, and which relate to the action of the chief justice at chambers in granting an order for the payment of one thousand dollars by defendants to the complainants. This sum appears to have been credited by the master in his report to defendants, and whatever error there might have been in the granting of this order by the chief justice at chambers, can not now, in any way, affect the rights and interests of these defendants. For by the judgment of this court they are found to be owing the complainants, as the legal representatives of the estate of N. Webb, deceased, the sum of seventy-two thousand nine hundred and twenty dollars and seventy-five cents, and this credit having been allowed them, and no injustice done the defendants, it is

unnecessary, so far as the purposes of this suit are concerned, to pass upon these alleged errors.

Having examined fully all the errors assigned excepting those based on the pleadings, which have been regarded by the court at the outset as surplusage, we are unable to see that any errors have been committed by the court below. The judgment of the court below is, therefore, affirmed, with the corrections herein made; and the defendants, in the opinion of the court, being chargeable with the errors corrected by this court, judgment will be entered against them for costs.

The other judges concur.