59 P.(2d) 893

STATE ex rel. GALLEGOS et al. v. DISTRICT COURT, NINTH JUDICIAL DIST., et al. (SANDOVAL, Intervener).

No. 4180.

Supreme Court of New Mexico.

June 22, 1936.

in equity, which has been tried three times before a jury with the disagreement of the jury in each of said trials, and which cause the district court was, at the time of the filing of the application, holding without decision to determine whether he would decide to decide the issue involved.

The relators are the executrix of the last will and testament of Filiberto F. Gallegos, deceased, and the legatees and devisees named in his will.

The petition for the probate of the will was filed in the probate court of Quay county. Arturo Sandoval, claimant below, intervener in this court, filed his written objection to the probate of the will, claiming that he was the illegitimate son of the deceased and had been omitted from the will. The probate court denied the petition of Sandoval and admitted the will to probate. From that order claimant appealed to the district court, and also, within 90 days, caused the administration of the Gallegos estate to be removed to the district court under the provisions of Comp.St.1929, §§ 34-422, 34-423. Later, the intervener elected to abandon his appeal, and proceed under the removal statute, which provides for a trial de novo in the district court upon request in such cases. In re Montano's Estate, 38 N.M. 355, 33 P.(2d) 906.

Myron B. Keator, of Tucumcari, and H. A. Kiker, A. M. Fernandez, and Manuel A. Sanchez, all of Santa Fe, for relators.

Carl A. Hatch, of Clovis, James L. Briscoe, of Tucumcari, E. M. Grantham, of Clovis, and T. V. Truder, of Las Vegas, for intervener.

Harry L. Patton, of Clovis, pro se.

HUDSPETH, Justice.

The relators invoke the jurisdiction of this court to compel, by mandamus, the Honorable Harry L. Patton, judge of the Ninth judicial district, to decide a cause

It is admitted that the only issues arising upon the claim of Arturo Sandoval are: (a) Is Arturo Sandoval the illegitimate son of Filiberto F. Gallegos, deceased, a pure question of fact; and (b) Did Filiberto F. Gallegos in his lifetime generally and notorious-

ly recognize Arturo Sandoval as his illegitimate son, a mixed question of fact and law.

At the second and third trials the relator objected to the court calling a jury. At the third trial, after intervener's counsel consented, stated that "it didn't make any difference," the court ruled that it was an equitable trial and announced that he was calling the jury in an advisory capacity. Relators objected and excepted to the calling of the jury. After the jury at the third trial reported that they were unable to reach a verdict, the court said: "However you would have decided this case, that would have been my verdict." After the discharge of the jury the relator moved the court to proceed to decide the case and enter judgment upon its decision. The court ruled that he would take that motion under advisement.

Relators in their petition for the writ of mandamus state: "That it was then and there, and now is, the plain, clear duty of the court, and the judge thereof, the respondent above named, having tried said cause in equity, and having called a jury only in an advisory capacity, to decide said cause, or to announce that having taken the decision of said cause under advisement, it would in due time announce its decision thereon; and it was and is further the duty of the court upon deciding said cause, to permit counsel for contesting litigants to request findings of fact and conclusions of law in said cause before the entry of judgment; but the court, notwithstanding said clear, plain duty, is holding said cause without a decision thereon, and without announcing that it will ever at any time decide said case; and is, according to its announcement, deliberating upon whether it will proceed to a decision of the case so tried before it, or call for another trial of the issues of fact so made up as aforesaid."

The response to the rule to show cause reads, in part, as follows, to wit:

"That your Respondent has faith, and always has had faith in the wisdom of the verdict of a jury upon issues of fact; that your Respondent desired the advice of a verdict of a jury upon said issues of fact.

"Your Respondent further states that while, after the discharge of the Jury, Respondents in said case moved the court for the rendition of judgment for Respondents, Claimant has never so moved."

The material facts are not in dispute. The costs of the three trials to the county of Quay amount to $2,249.24. The case was first tried in the district court in December, 1933. The estate is large and consists of encumbered live stock and ranch lands. Relators complain that they are being kept out of their inheritance and may lose a large part because the secured creditors are threatening foreclosure proceedings; the executrix being unable to refund said indebtedness because of this litigation. Relators also represent that it has cost the estate about $1,000 for each trial, that they have had to bring witnesses from California and Texas, and that many of the witnesses

are old and some have died during the pendency of the cause.

A question strenuously argued here, which gave the trial court much concern, and, notwithstanding his ruling, evidently colored his thoughts throughout his consideration of the case, is as to the right of intervener to insist on a trial by jury. Intervener maintains that he is entitled to a jury trial under Comp.St.1929 § 154-209, which reads as follows: "Probate—Procedure when will found invalid. If the probate judge finds the due execution and validity of the will to be proved, he shall render a judgment approving it as the last will and testament of the decedent, which shall be entered of record in the case. If such judge shall be of the opinion that the will is not valid, he shall endorse such opinion on the will and transmit the same, with all the testimony taken before him, and a transcript of the proceedings, to the clerk of the district court for his county. The matter shall then stand for hearing de novo in the district court the same as on appeal, but either party, on demand therefor, shall have the right to a trial by jury on such appeal; and the judgment of the district court declaring the will valid or void, shall, when the same becomes final, be certified by the clerk of the district court, to the clerk of the probate court, and shall be entered of record in the latter court as a part of the proceedings in the case. (L. '89, Ch. 90, § 11; C.L. '97, § 1983; Code '15, § 5879."

This section of the statute was considered in the case of In re Riedlinger's Will, 37 N. M. 18, 16 P.(2d) 549, a case appealed to the district court under the provisions of Comp. St.1929, § 34-420, and involving the due execution of a will. No such question is involved here. The order of the district court dismissing intervener's appeal reads, in part, as follows, to wit:

"That said Arturo Sandoval admits the due execution of said will, and that his claim against said estate is based upon the provisions of Sec. 154-112 of the 1929 Codification, as a pretermitted heir."

"It is therefore ordered that the appeal of said Arturo Sandoval from the order of the Court admitting said will to probate be and the same is hereby dismissed; and that the administration of said estate proceed in this court upon said removal from the Probate Court."

█ This case falls within the rule laid down in Sheley v. Shafer, 35 N.M. 358, 298 P. 942, where we held that when the administration of an estate is removed from the probate court to the district court under the provisions of Comp.St.1929, § 34-422, it stands on the docket of the district court as a proceeding in equity, and that a claimant is not entitled to a jury trial as a matter of right. We see no reason for changing the rule.

Another disputed question is as to the right of intervener to introduce additional evidence in case the trial court decides to adjudicate all issues without calling another jury. This is a matter within the discretion of the chancellor. The Supreme Court of West Virginia, in Bartholow v. Hoge et al.,

71 W.Va. 427, 76 S.E. 813, said: "Defendants say that it was error for the court, after taking the cause for decision, to direct that further proof be taken. This action would seem to be within the inherent power of a court of chancery. We know of no good reason why a chancellor, in the furtherance of justice between the parties, may not call for additional evidence in order that extremely doubtful points of fact may be elucidated and more intelligently decided. 'The matter rests largely in the discretion of the chancellor, who may reopen a case where some additional fact or inquiry is indispensable to enable him to make a satisfactory decree.' Fletcher on Equity Pleading and Practice, 691. Lord Bacon, in formulating his Ordinances in Chancery, provided for the examination of witnesses after publication of the evidence, to be taken by special order ad informandum conscientiem judicis. The practice in proper cases has long been sanctioned. Mr. Justice Story stated the rule thus: 'New evidence to inform the conscience of the judge should not be taken but upon or after the hearing, when the judge himself entertains a doubt, or when some additional fact or inquiry is indispensable to enable him to make a satisfactory decree.' Wood v. Mann, Fed.Cas. No. 17,953, 2 Sumn. 316. Plainly, from the terms of the order in the case before us, it was in recognition of this rule that the order for the further taking of evidence was made. As we have seen, the matter was largely in the discretion of the court, and its discretion in the premises appears to have been properly exercised."

One of the important questions argued is the matter of procedure in chancery cases where the right to a jury trial is not expressly given. In Idaho & Oregon Land Imp. Co. v. Bradbury, 132 U.S. 509, 10 S. Ct. 177, 179, 33 L.Ed. 433, the United States Supreme Court said: "The case being one of equitable jurisdiction only, the court was not bound to submit any issue of fact to the jury, and, having done so, was at liberty to disregard the verdict and findings of the jury, either by setting them, or any of them, aside, or by letting them stand, and allowing them more or less weight, in its final hearing and decree, according to its own view of the evidence in the cause. By the settled course of decision in this court, it is not necessary that a court of equity should formally set aside the verdict or finding of a jury before proceeding to enter a decree which does not conform to it."

An interesting discussion of this question appears in the decision of Brown v. Buck, Kalamazoo Circuit Judge, 75 Mich. 274, 42 N.W. 827, 830, 5 L.R.A. 226, 13 Am. St.Rep. 438, as follows: "The functions of judges in equity cases in dealing with them is as well settled a part of the judicial power, and as necessary to its administration, as the functions of jurors in common-law cases. Our constitutions are framed to protect all rights. When they vest judicial power they do so in accordance with all of its essentials, and when they vest it in any court, they vest it as efficient for the protection of rights, and not subject to be distorted or made inadequate. The right to have equity controversies dealt with by equi-

table methods is as sacred as the right of trial by jury. Whatever may be the machinery for gathering testimony or enforcing decrees, the facts and the law must be decided together, and when a chancellor desires to have the aid of a jury to find out how facts appear to such unprofessional men, it can only be done by submitting single issues. of pure fact, and they cannot foreclose him in his conclusions unless they convince his judgment."

In Stevens v. Duckett, 107 Va. 17, 57 S.E. 601, 603, it is stated:

"The first and most important question to be considered on this appeal involves the court's action .in directing this issue to be tried by a jury,.

"It has long been settled by the decisions of this court that an issue out of chancery will not be directed when the claim is altogether unsupported by evidence. The rule has been that the defendant cannot be deprived, by an order for an issue, of his right to a decision. by the court on the case as made by the pleadings and the proof, unless the conflict of the evidence is so great and its weight so nearly evenly balanced that the court is unable to determine on which side the preponderance is. Pryor v. Adams, 1 Call [5 Va.] 382, 1 Am.Dec. 533; Wise v. Lamb, 9 Grat.[50 Va.] 294; Smith's Adm'r v. Betty, 11 Grat.[52 Va.] 752; Beverley v. Walden, 20 Grat.[61 Va.] 147; Mahnke v. Neale, 23 W.Va. 57.

"It is also settled by numerous decisions of this and other courts that the ordering of issues depends on the application of sound

legal discretion to the circumstances of the case. It is not a power to be exercised at pleasure, and depending on arbitrary discretion. Ordering an issue must always depend upon sound discretion, to be cautiously and diligently exercised, according to the circumstances of each particular case. Beverley v. Walden, supra; Mahnke v. Neale, supra."

In 21 C.J. 590, Equity, § 724, the following appears:

"* * * A chancery case which does not involve any important issues of fact, but depends on the application of legal principles to admitted facts, should not be submitted to a jury for an advisory verdict. An issue should not be directed to try a question of law, or a mixed question of law and fact. * * *"

See, also, Kohn v. McNulta, 147 U.S. 238, 13 S.Ct. 298, 37 L.Ed. 150; Flippin v. Kimball, 87 F. 258 (C.C.A.); Dillingham v. Hawk, 60 F. 494, 23 L.R.A. 517 (C.C.A.); 21 C.J. 594; 64 C.J. 1198.

It is the rule in equity cases, supported by the great weight of authority, that the responsibility is that of the chancellor, and that the verdict of a jury is merely advisory and not binding upon the court.

The decree should be entered according to the court's own view of the evidence. The judicial power conferred upon the courts by our Constitution included chancery jurisprudence, wherein it is the chancellor's need, not his nor the litigant's pleasure which justifies the calling of a jury.

Being solely for the benefit of the chancellor, if he can to his own satisfaction pass upon the evidence without the assistance of a jury trial, it is his duty to do so.

The learned counsel of relator have filed an interesting brief on the right of this court to direct the district court to try or decide a case, and cite Territory v. Ortiz, 1 N.M. 5; Branford v. Erant, 1 N.M. 579; State ex rel. Meyers Co. v. Raynolds, Judge, 22 N.M. 473, 164 P. 830; Barber Asphalt Pav. Co. v. Morris, Judge (C.C.A.) 132 F. 945, 67 L.R.A. 761 (Opinion by Judge Sanburn); State of Louisiana ex rel. City of New Orleans v. Judge, 52 La.Ann. 1275, 27 So. 697, 51 L.R.A. 71 and note; State ex rel. National Bank v. Johnson, 105 Wis. 164, 83 N.W. 320; People v. Board of Commissioners, 176 Ill. 576, 52 N.E. 334; In re Snyder, 184 Wis. 10, 198 N.W. 616; Illinois State Board of Dental Examiners v. People, 123 Ill. 227, 13 N.E. 201; State ex rel. Spence v. Dick, 103 Wis. 407, 79 N.W. 421; State ex rel. Southern Colonization Co. v. Circuit Court, 187 Wis. 1, 203 N.W. 923, 48 A.L.R. 894; State v. Williams, 136 Wis. 1, 116 N.W. 225, 20 L.R.A.(N.S.) 941; Riesland v. Bailey, 146 Or. 574, 31 P.(2d) 183, 92 A.L.R. 1207; 38 C.J. 598; National Mutual Savings & Loan Ass'n v. McGhee, 38 N.M. 442, 34 P.(2d) 1093; Ex parte Newman, 14 Wall. 152, at page· 165, 20 L.Ed. 877; McClellan v. Carland, 217 U.S. 268, 30 S.Ct. 501, 54 L.Ed. 762; In re Press Printers & Publishers (C.C.A.) 12 F.(2d) 660.

However, we deem it unnecessary for us to consider at this time the question of the extent of our authority. It is apparent that the learned district judge throughout the three trials expected a verdict of a jury to finally settle the questions of fact. With the clarification of the foregoing issues, we feel that the trial judge will view this case in a somewhat different light, and, notwithstanding his expression of faith in the wisdom of the verdict of juries, and his intention to again try the case to a jury, that he will reconsider that determination.

We have no hesitancy in saying that now, after three trials, before incurring the delay and expense of another trial, it is the duty of the chancellor, with such aid as counsel can render, to review the record and on the evidence submitted, or with additional evidence, to earnestly endeavor by his own independent judgment to adjudicate the controversy satisfactorily to his conscience. The rule to show cause will be discharged without prejudice.

It is so ordered.

BICKLEY, J., concurs.

ZINN, Justice (specially concurring).

The minority say that to them it would seem to be useless and unnecessary to have a complete retrial of this case, but, notwithstanding such view, believe the same should be properly left to the discretion of the trial judge without a jury, however, to proceed with or without the taking of additional testimony to a decision of the case. This clearly is depriving the chancellor of

the right to have issues of fact determined by a jury to aid his conscience.

If, as the minority feel, the chancellor has abused his discretion and ought to be directed to proceed to decide, then why permit him to take additional testimony?

It seems to me that the proper way to test the right of relator to a writ of mandamus directing the trial judge to proceed to a decision would be as though the alleged abuse of discretion on the part of the trial judge was here for review on appeal. Clearly there is no manifest abuse of judicial discretion. The matter of referring questions of fact in equity causes to a jury, in aid of the chancellor, is always addressed to his discretion, and we cannot undertake to control his action in that regard unless there has been a palpable abuse of that discretion. 4 C.J. 828. Blakey v. Johnson, 13 Bush (Ky.) 197, 26 Am.Rep. 254.

Three trials have been had, and the chancellor's conscience is troubled. Three juries cannot agree. I can see no manifest abuse of discretion in these conditions. It is unfortunate that jury terms are so far apart that years elapse before a final decision can be arrived at. If this was a law case, no complaint could be had on that score. A litigant in a law case has the unquestioned right of trial by jury. If there are ten jury disagreements in a law case, the litigant still has that right. The chancellor has the right to submit an issue of fact to a jury to aid him in arriving at a decision. This right is not subject to review except for palpable abuse. The number of times

a jury might be called to so aid the chancellor is not determinative of such abuse.

I quote from Daniell's Chancery Practice, vol. II, pp. 439 and 440:

"It is to be observed, that if the matter relates to the right to land, the Court will frequently direct new trials of issues, even in cases in which the issue has been properly tried, and the verdict is satisfactory upon the evidence, the practice of the Court being adverse to making a decree to bind the inheritance, where there has been but one trial at law. (r) This is the case, especially where the object is to establish a will against an heir-at-law; for as the heir, but for the interference of the Court, would be entitled to take the successive opinions of juries, by new ejectment, this Court will not bind him by one trial only, but will direct a second; (s) and if it happens, that one verdict goes one way, and the other another way, then the Court will ordinarily, on motion, order a third trial, which is commonly *conclusive. (t) But where there was verdict against verdict, and a third trial was prayed by him for whom the first went, and it appeared to the Court, by affidavit, that, since the last trial, he had caused a bank of earth to be dug away, and with it certain old posts which were fixed in the ground, and were supposed to have been the bottom of park pales, dividing the land in question so that the jury could not now have any view of it, the Court, for this cause, denied another trial. (u)

"But in the case of a will, even after two trials, in both of which the verdict has been

in favour of the will, the Court, where it was not satisfied with the manner in which the last trial was conducted, has directed a third trial; (x) and that, even though it did not appear from the judge's report, that there was any reason to disturb the verdict. It seems, also, that even after three trials, the Court will, if it sees reason to be dissatisfied with the verdict, grant a fourth. An application for this purpose, was made to the Court in Pemberton v. Pemberton, (y) and no objection was raised to the power of the Court to direct a fourth trial, though the result of the case was, that Lord Eldon, being satisfied with the verdict, refused the motion. In general, however, the Court will not direct a new trial after a third, unless upon some special ground: and in Attorney General v. Montgomery, (z) Lord Hardwicke said, that where there had been two trials, the last of which was at bar, this Court has suffered the last to prevail; and that to lay down a rule that there must be three, would be attended with great expenses. In the Minor Canons of St. Pauls v. Morris, (a) after two trials, at bar, a third trial was refused, although evidence had been rejected at the last, which the Court thought ought to have been received; and, in Bates v. Graves, (b) the Court refused a third trial of an issue as to the validity of a will of real estate, although neither of the former trials had been at bar."

I also find in a note in Beach's Modern Equity Practice, vol. 2, on page 660, under the subject-matter of Feigned Issues, the following: "Chancery will often grant a second, and sometimes a third, fourth, or even a fifth, trial of a feigned issue, in cases where a court of law would not disturb the first verdict. Patterson v. Ackerson, 1 Edw. Ch.[N.Y.] 96."

That the chancellor can disregard the unanimous verdict of a jury, and submit the question to another jury, and not be charged with abuse of discretion, is settled law. 21 C.J. 586, and cases cited.

"In chancery cases, except in cases where the submission to a jury is required by law or the rules of chancery practice, the chancellor is the judge of the weight of the evidence and of the ultimate facts established by it. If he submits controverted questions of fact to a jury, as he may do, the verdict or finding of the jury is advisory merely. He may adopt the verdict, or set the same aside and resubmit the question to a jury, or he may disregard it, and enter such a decree as in his judgment equity demands. He may enter his decree after setting the verdict aside or without setting it aside." Hardy v. Dyas, 203 Ill. 211, 67 N.E. 852, 853.

If the chancellor can disregard the verdict of a jury and render a contrary decision, or he can disregard the verdict and again submit to another jury a question of fact already unanimously agreed upon by a former jury, I cannot say that, because three juries have disagreed, the chancellor should be deprived of his right to the aid of a jury in determining issues of fact and hold that he has abused his discretion.

I agree with the result achieved by Mr. Justice HUDSPETH in his opinion.

SADLER, Chief Justice, and BRICE, Justice (concurring in part, and dissenting in part).

We concur in so much of the prevailing opinion as holds the parties not entitled as a matter of right to a jury trial of the issues presented. The jury was thus present in an advisory capacity. This is certainly true of the last two trials. Throughout such trials counsel for all parties as well as the trial judge either openly agreed such was the jury's status or acquiesced in the claim that its function was advisory to the chancellor. In this conclusion, we think all were correct as held by the majority.

We dissent from that part of the prevailing opinion which denies to relators a peremptory writ of mandamus directing the district judge to proceed further without the intervention of a jury. Thus far the jury's presence is explained as a potential aid to the trial judge in deciding the facts. The reasonable hope that it might so aid furnished, in the first instance, in the second instance, and in the third instance, the sole legal warrant for calling in a jury. The chancellor's right within his discretion to seek this aid cannot be questioned. 21 C.J. 585, § 721 under "Equity"; Huntington v. Moore, 1 N.M. 489, 501. But when the issues involved have been submitted to a jury three times without result, we consider it no longer reasonable to hope that the aid which alone warrants its presence will ever be rendered.

In our view, an affirmative answer to the inquiry whether we should direct issuance of the writ if relators were here seeking it after the fourth, the fifth, the sixth, or even the tenth mistrial before a jury, is decisive of relators' right to the writ. In other words, may we in a case of this kind grant the writ at all? Of course, if we are without power to exercise any control over the discretion of the chancellor in such a case, that ends the matter. The majority then necessarily are correct. We do not understand them to hold, however, that a time might not come, through constantly recurring mistrials before a jury, when they would say it amounted to an abuse of discretion by the chancellor not to decide the case himself. If we correctly understand the majority view, we disagree only in respect of whether that time has yet arrived. We think it has, and would award the writ at this stage. The majority withhold it for the present.

It must not be forgotten that even with a jury the ultimate decision on the facts, as well as the law, rests with the chancellor. Hence, the jury's function is purely incidental. Its verdict may be disregarded or accepted, in whole or in part, according to the weight given it by the chancellor. 21 C.J. 596.

Bearing in mind this purely incidental function on the part of the jury, remembering that the ultimate decision abides

always with the chancellor, should the failure to function of that which is but an incident be permitted to postpone interminably a decision by him who ultimately must decide at all events? We think not. In equity the jury is but an arm of the chancellor in arriving at the true facts. If, after repeated efforts, it fails to function, it becomes a useless appendage and should be eliminated.

Had there been three mistrials of this case before the court without a jury, if such a result be conceivable, none would gainsay relators' right to ask, nor our duty to direct, a decision in the matter. Seen through, and in so far as the analogy bears upon the chancellor's right to award a fourth jury trial, that in substance is the case presented. For at each trial save the first, which was treated by all as a law action, the ultimate decision on the facts resided in the chancellor, with or without a verdict.

In fairness to the respondent judge it should be said that he confesses no inability to decide, if so directed. At the trial before us he frankly stated he could and would decide the case, if, in our judgment on the facts presented, we considered he no longer possessed the right to seek the advice of a jury. But both as a witness and in his return to the order to show cause he made it plain that he desires the aid of a jury verdict in deciding the issues.

Only two issues on the facts present themselves: (1) Is Arturo Sandoval the illegitimate son of Filiberto Gallegos? (2) Did Filiberto Gallegos during his lifetime notoriously and generally recognize him as such?

Indeed, the last issue is a mixed one of law and fact and some question arises and is suggested concerning the right to submit such an issue to a jury sitting in an advisory capacity. But granting the right to submit it, the issues are few and clear cut. Simple as they are we may concede some difficulty in sifting the kernel of truth from a mass of conflicting testimony. Even so, an application of well-established principles touching the burden of proof or the duty of going forward with the evidence determines the result.

That this court in a proper case has power by mandamus to direct a district judge to proceed in a cause, or render some judgment without indicating the character of judgment where the case is ripe for judgment, has been recognized by judicial statement both in territorial days and since statehood. Territory v. Ortiz, 1 N.M. 5; Branford v. Erant, 1 N.M. 579; Sweeney v. Raynolds, 17 N.M. 282, 127 P. 23; National Mutual Savings & Loan Ass'n v. McGhee, 38 N.M. 442, 34 P.(2d) 1093.

In State ex rel. City of New Orleans v. Judge of Civil District Court for Parish of New Orleans, 52 La.Ann. 1275, 27 So. 697, 51 L.R.A. 71, the Supreme Court of that state, in the exercise of the supervisory control granted it by the Constitution over all inferior courts, issued the writ of mandamus to correct an abuse of discretion by the trial judge. A similar grant of juris-

diction to exercise superintending control over all inferior courts is conferred by our Constitution on this court with power to issue writs of mandamus and all other writs necessary or proper for the complete exercise of said jurisdiction.

It seems well settled, too, that a court of review in aid of its appellate jurisdiction has power by mandamus to direct the trial court to proceed to final judgment. Knickerbocker Ins. Co. v. Comstock, 16 Wall.(83 U.S.) 258, 270, 21 L.Ed. 493; McClellan v. Carland, 217 U.S. 268, 30 S. Ct. 501, 504, 54 L.Ed. 762; Barber Asphalt Paving Co. v. Morris, Judge (U.S.C.C.A. 8th Circuit) 132 F. 945, 953, 67 L.R.A. 761.

In Knickerbocker Ins. Co. v. Comstock, supra, the court said: "Repeated decisions of this court have established the rule that this court has power to issue a mandamus, in the exercise of its appellate jurisdiction, and that the writ will lie in a proper case to direct a subordinate Federal court to decide a pending cause. Marbury v. Madison, 1 Cranch [137] 175 [2 L.Ed. 60]; Kendall v. United States, 12 Pet.[524] 622 [9 L. Ed. 1181]. Power to issue the writ of mandamus to the Circuit Courts is exercised by this court to compel the Circuit Court to proceed to a final judgment or decree in a cause, in order that this court may exercise the jurisdiction of review given by law."

In the McClellan Case, supra, the same court made it plain that prior invocation of its appellate jurisdiction is not a prerequisite to awarding the writ. It said: "There are not wanting decisions in the Federal courts, holding different views as to the right to issue such writs as are involved in this case, before the appellate court has actually obtained jurisdiction of the case. There are expressions in opinions of this court to the effect that such writs issue in aid of a jurisdiction actually acquired. But we think it the true rule that where a case is within the appellate jurisdiction of the higher court, a writ of mandamus may issue in aid of the appellate jurisdiction which might otherwise be defeated by the unauthorized action of the court below."

In Barber Asphalt Paving Co. v. Morris, supra, the United States Circuit Court of Appeals of the Eighth Circuit spoke through Judge Sanborn on the extent of this jurisdiction, as follows:

"There is no dissent among courts or lawyers from the proposition that the national courts may issue the writ either in the exercise of or in aid of their appellate jurisdiction. The only question here is whether they may issue it in aid of that jurisdiction whenever it exists, or only when it has been actually invoked by a writ of error or by an appeal. This question has now been ably and exhaustively argued by counsel for the respective parties to this application. All the authorities upon it appear to have been called to our attention, and it has again received the thoughtful and deliberate consideration of the court in the light of the numerous decisions which have

been cited. It is obvious that the primary reason for the grant to the federal appellate courts of the dominant power to issue their writs of mandamus to the inferior courts in the exercise of and in aid of their appellate jurisdiction was to enable them to protect that jurisdiction against possible evasions of it. It is not less evident that the grant must in many, nay, in most, cases, fail to accomplish its chief end if the power to issue the writ can be exercised only after the appellate jurisdiction has been actually invoked by an appeal or by a writ of error. Under the acts of Congress the proceedings in every suit in the Circuit Court of the United States are now reviewable either in the Supreme Court or in the Circuit Court of Appeals. The moment such a suit is commenced, the appellate jurisdiction over it exists, the power and the right to ultimately review the proceedings in it are vested in one of the appellate courts. But in the great majority of cases it is only by an appeal or by a writ of error which challenges the final decision in the case that any of the proceedings in it may be reviewed. The opportunities for subordinate courts to evade the jurisdiction of the appellate courts, to prevent the exercise of this jurisdiction, and to destroy or make ineffectual the right of the unsuccessful party to review their rulings by failures to settle bills of exceptions, by unreasonable delays, by stays of proceedings, and by direct and indirect refusals to proceed to final judgments and to their enforcement are far more numerous before the writs of error or the appeals can be taken than they can be thereafter. Few, indeed, are the cases in which appellate jurisdiction is disregarded after the right to it has been actually exercised. But many cases arise in which the acts or orders of the inferior courts, unless corrected by the writ of mandamus, prevent the exercise of appellate jurisdiction and destroy its effect before any final decision which may be challenged by appeal or writ of error has been reached. * * *

"The reasons and decisions to which we have now adverted have impelled our minds with irresistible force to the conclusion that the true test of the appellate jurisdiction in the exercise or in the aid of which the Circuit Courts of Appeals may issue the writ of mandamus is the existence of that jurisdiction, and not its prior invocation; that it is the existence of a right to review by a challenge of the final decisions, or otherwise, of the cases or proceedings to which the applications for the writs relate, and not the prior exercise of that right by appeal or by writ of error; and that the power of those courts to issue the writ is not restricted as was stated in United States v. Judges of the United States Court of Appeals of the Indian Territory, 85 F. 177, 29 C.C.A. 78, to cases in which their jurisdiction has already been invoked by other proceedings."

We entertain no doubt of this court's power to award the writ, and think this an appropriate case for exercise of the power. A large estate has been involved in costly litigation for several years. Intervener, if

his claim be sustained, is entitled to share in the distribution of that estate. Avoidable delay in deciding the case either keeps him from his rightful inheritance or postpones distribution to the other lawful heirs. In the meantime, all parties in interest must stand by and see a substantial part of the inheritance consumed in a wasteful and seemingly endless litigation. Is the judicial machinery helpless in such a situation? We do not think so. Sound reason and high authority point to mandamus as the appropriate remedy.

Intervener contends with great earnestness that even if the writ should issue, the right to which is vigorously challenged, it should do no more than direct the trial judge to proceed without a jury. The difference in the method of presenting a case before a jury as contrasted with that employed in a court trial is pointed out. There is authority supporting intervener's contention to a certain extent. In 21 C.J. 596, the text states: "The court may adopt or reject the findings in whole or in part, and in lieu of those not adopted, may make findings of its own. It has been held, however, that when a submission is made to a jury as though they were the ultimate triers of the facts, the court cannot thereafter arbitrarily determine the case itself without giving the parties a hearing of some kind and to some extent."

See, also, Vickers v. Buck Stove & Range Co., 65 Kan. 97, 68 P. 1081.

The issues having been developed at the third trial in the light of two previous trials, it would seem useless and unnecessary to have a complete retrial of this case. However, this is a matter which we feel may properly be left to the discretion of the trial judge. Feeling there is some merit in this contention, it is our conclusion that a peremptory writ of mandamus should issue directing the respondent district judge to proceed to a decision in the case without the intervention of a jury and with or without the taking of additional testimony, as his discretion shall determine. For the reasons given, we disagree with the prevailing opinion to the extent that it withholds the actual award of a writ so drawn.